**In the Interest of K.E. and J.K.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 17, 1997.

Timothy J. Farrell, Burlison & Farrell, St. Peters, for appellant.

John Smith (Appointed Counsel), St. Charles, Michael Kruse, Guardian Ad Litem, O'Fallon, for respondent.

GARY M. GAERTNER, Judge.

In this consolidated appeal, appellant, S.V. ("mother"), appeals the judgment of the Circuit Court of St. Charles County terminating her parental rights to K.E. and J.K. pursuant to RSMo § 211.447.2(2) (1994).[1] We remand.

Mother married G.F. at the age of fifteen; J.K. was born of the marriage. G.F. thereafter abandoned mother and J.K. in 1991 or 1992, though the parties never divorced. Mother then "married" D.K., but the parties separated and the marriage was "annulled." Shortly thereafter, mother became involved with K.W.; K.E. was born of this relationship. K.W., though acknowledging K.E. was his child, left the St. Louis area and never provided support to mother or K.E.

Mother began dating T.R. in February 1994. They moved in together, along with mother's children, approximately one or two months later.

On September 30, 1994, K.E. and J.K. were taken into protective custody by the Division of Family Services ("DFS"), as the result of an abuse hot line call. On September 24, 1994, mother had taken K.E., who was then two and one-half-years old,[2] to the hospital after she had been sick for approximately a week. Her symptoms began with a runny nose and cough, and progressed into vomiting, fever, decreased appetite, lethargy, headache, and abdominal pain. About this time, mother also noticed burn marks on K.E.'s buttocks when changing the child's diaper; she began treating the burns with ointment and children's tylenol. On September 23, 1994, K.E. slept until the early afternoon. Upon waking, K.E. could not properly stand or walk, continually fell over, and complained of pain in her left leg. When K.E. did not improve by the next day, mother took K.E. to the emergency room at St. Joseph's Hospital.

At the hospital, health care providers examined K.E. and noted she suffered from fever, lethargy, and ataxia. They also observed multiple bruises over her body and burn marks on her buttocks. An abuse hot line call was placed, and Jeff Viehmeyer, an abuse hot line investigator, responded. Viehmeyer noted the bruises over K.E.'s body, the burn marks, and also a bite mark on her arm. K.E. and J.K. were placed in temporary protective custody of DFS at that time. K.E. was transferred to Cardinal Glennon's Children's Hospital for an evaluation, and J.K. was taken to St. Joseph's Hospital.

At Cardinal Glennon's, health care providers initially noted two fading bruises on K.E.'s forehead, a fading bruise on her cheek, a fading adult-size bite-mark on her left biceps, five fading bruises on her chin, six fading bruises on her left thigh, and two burn marks on her buttocks. K.E. was diagnosed with the following during her stay: subdural hematoma due to a closed head injury, fever, cerebral edema, retinal hemorrhages, a bruise to the forehead, first and second-degree burns on her buttocks, ataxia, multiple bruises to the forearm and elbow, tremors of the right arm, iron deficiency anemia, and a middle-ear infection. K.E. was later diagnosed as mentally retarded.

With respect to J.K., health care professionals at St. Joseph's noted he had various bruises on his face and forehead, as well as linear bruises on his buttocks. He was later diagnosed with deficit hyperactivity disorder and oppositional defiant disorder.

Following a police investigation, mother's boyfriend, T.R., admitted abusing K.E. and J.K., including being responsible for inflicting

1. All statutory references will be to RSMo 1994 unless otherwise noted.

2. K.E., a girl, was born on February 13, 1994; J.K., her half-brother, was born on February 2, 1991.

the burns and bite-mark on K.E.[3] On October 5, 1994, the Juvenile Officer filed abuse and neglect petitions alleging K.E. and J.K. were in need of care and support. A guardian ad litem was appointed for the children, and an attorney was appointed to represent mother. On October 24, a hearing was held on the petitions, during which mother admitted all of the allegations set forth.

The trial court found J.K. and K.E. were without proper care, custody or support while mother was exercising care, custody and control over the children, in that mother's boyfriend, T.R., physically abused J.K. and K.E. The court further found mother failed to take steps to prevent the abuse inflicted upon the children by T.R. Finally, the trial court found DFS had made reasonable efforts to reunify the family and eliminate the need for alternative care, but the children were in need of care and treatment which could not be provided in mother's home. The children were placed in the legal and physical custody of DFS.

On January 20, 1995, the Juvenile Officer filed separate petitions for the termination of mother's parental rights on behalf of J.K. and K.E. respectively,[4] which were consolidated with the abuse and neglect petitions previously filed. The trial court set aside the findings and recommendations of jurisdiction it had previously entered, and mother once again admitted all allegations set forth in the abuse and neglect petitions.[5] The termination petitions alleged the respective child had been adjudicated abused and neglected pursuant to RSMo § 211.031.1(1)(a) and (b), in that mother's boyfriend physically abused the child under circumstances such that mother knew or should have known that such abuse was being committed in violation of RSMo § 211.447.2(2)(c).

A hearing for the termination of mother's parental rights was set for November 1, 1995. This hearing was continued until December 21, 1995. At the hearing, the Juvenile officer presented the testimony of Janet Miller, the DFS social worker responsible for mother's case, Deborah Douglas, a DFS social worker responsible for foster care placement, Jeff Viehmeyer, the hot line investigator, and mother herself. Also admitted into evidence were Miller's investigation and report, the children's medical records, and photographs depicting the children's injuries. Mother offered her own testimony, as well as that of her mother, her sister, and the father of the child mother was carrying at the time of trial. The trial court took judicial notice of its files wherein it had previously adjudicated K.E. and J.K. abused and neglected. At the close of all the evidence, the trial court terminated mother's parental rights. Mother filed this appeal.

■■■ Mother raises three issues on appeal: First, she contends, and the respondent-Juvenile Officer concedes the trial court erred in terminating mother's parental rights where it failed to make specific findings on conditions set forth in and required by RSMo § 211.447.2(2). *See In Interest of K.D.C.R.C.B–T,* 928 S.W.2d 905, 908–909 (Mo.App. E.D.1996); *In re Interest of E.K.,* 860 S.W.2d 797, 799 (Mo.App. E.D.1993). This provision allows the trial court to terminate a parent's rights when termination is in the child's best interests and when the court finds the child has been previously adjudicated abused or neglected. However, the provision requires the trial court, when terminating one's parental rights on this ground, to consider and make findings on four conditions set forth under the paragraph. Here, the trial court addressed the third condition, concerning severe acts or recurrent acts of physical abuse toward a child by a member of the household under circumstances that indicate the parent knew or should have known such acts were being committed, but failed to make findings concerning the other three conditions.[6] The trial court must enter

---

3. T.R. pled guilty to criminal charges arising from the acts of abuse inflicted.

4. The petitions also prayed for the termination of the fathers' parental rights.

5. The reasons for this action are not clear from the record.

6. The remaining three conditions pertain to (1) a mental condition or (2) a chemical dependency which prevents a parent from providing the child with adequate care, or (3) the repeated failure of a parent to adequately provide for the child though the parent has the physical and financial

a finding with respect to each condition listed, even if only to state the condition is irrelevant and the reasons why. *Interest of E.K.*, 860 S.W.2d at 799.

Accordingly, while we believe the trial court properly terminated mother's parental rights under this provision, we decline to further address the merits of mother's appeal as we must remand to the trial court for findings on the conditions set forth in RSMo § 211.447.2(2)(a), (b) and (d).

Remanded with directions.

DOWD, P.J., and REINHARD, J., concur.

ability to do so. RSMo § 211.447.2(2)(a), (b) and (d).