**In the Interest of T.T. and T.T., Plaintiff.**

**David William KIERST, Juvenile Officer, Respondent,**

v.

**T.M. (Natural Father), Appellant.**

**No. WD 53435.**

Missouri Court of Appeals, Western District.

Aug. 19, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 30, 1997.

Application to Transfer Denied Nov. 25, 1997.

**430**

Tony Shapiro, Suzanne A. Block, Kansas City, for appellant.

Lori Stipp, Kansas City, for Respondent, Juvenile Officer.

Kyla Grove, Kansas City, Guardian ad Litem.

Before ULRICH, C.J., P.J., BERREY and HANNA, JJ.

ULRICH, Chief Judge, Presiding Judge.

T.M. (Father) appeals the trial court's termination of his parental rights to his two minor children, T.T. and T.T. He claims that termination of his parental rights was not in the best interests of the children and was against the weight of the evidence. Specifically, he asserts that the juvenile officer's action in denying him visitation with the children after the filing of the termination petition effectively terminated his parental rights without due process of law and that the evidence on which the trial court based its decision was a result of this "constructive" termination. Because termination of Father's parental rights was in the best interests of the children and was supported by the evidence, the judgment of the trial court is affirmed.

## FACTS

T.T., a female child born March 25, 1990, and T.T., a male child born April 23, 1991, were taken under the jurisdiction of the family court on December 7, 1993, pursuant to amended petitions alleging that the children, along with their five siblings, were without proper care, custody, and support. Specifically, the petitions alleged that the children's mother was habitually homeless and repeatedly left the children in the care of others without making proper arrangements for their care and support. Additionally, the mother allegedly admitted to having a drug and alcohol problem and that she was in need of treatment. Having sustained the petitions and found the children in need of care and treatment, the family court placed the children in the custody of Darrian Thomas and Patricia Ellis under the supervision of the Division of Family Services (DFS).

On March 30, 1994, requests for detention in the interest of T.T. and T.T. were filed in the family court alleging that the children were in need of protection. Orders of detention were granted the next day by a family court commissioner placing the children in the care and custody of the DFS.

Motions to modify the December 1993 judgments were filed on March 31, 1994, again alleging that the children were without proper care, custody, and support. The motions asserted that Darrian Thomas had not been providing care for the children and that Patricia Ellis had not provided a stable residence for the children in that on March 13, 1994, a shooting occurred in her residence involving her associates. Following receipt of evidence on the motions, the family court committed the children to the custody of the DFS on June 2, 1994, finding that the mother had neither completed drug treatment nor made sufficient progress in therapy and Father had little contact with the children. It recommended aggressive efforts to reunify.

On April 10, 1995, the juvenile officer filed petitions for termination of parental rights

against Father and the children's mother. The petitions alleged, among other things, that the children had no emotional ties with the parents, the parents had not maintained regular contact with the children, the parents had not provided financial support for the children when able to do so, and the parents had demonstrated disinterest in or a lack of commitment to the children.

Thereafter, Father filed a motion on January 8, 1996, requesting visitation with the children. The motion alleged that paternity tests in November 1995 revealed Father to be the natural father of the children, that DFS had denied him visitation with the children because termination petitions had been filed, and that he wished to establish a visitation schedule with the children. The motion was never heard.[1]

A hearing on the petitions for termination was held on March 14, 1996. Several DFS social workers assigned to the children's case testified regarding Father's contact with the children since 1993. According to this testimony, Father attended a Permanency Evaluation Team (PET) meeting in October 1993 and indicated that he wanted custody of the children. At the meeting, an appointment was made for a home study to be conducted at Father's residence. Father, however, failed to meet with the social worker on the day of the appointment. Although he telephoned a social worker three times during October 1993, he never left a return number and never contacted the social worker to reschedule the home study or to request any services including visitation.

Father's next contact with DFS occurred on April 11, 1994, when Father telephoned a social worker indicating that he wanted his aunt to have custody of the children. He also stated that he did not have the financial resources to support the children at that time. Father did not contact DFS again until July 1995 after the filing of the termination petitions.

Through a telephone call in July 1995, Father requested paternity tests although he had previously acknowledged paternity of the children. He also requested visitation. DFS denied visitation because Father had not requested or received visitation prior to the filing of the termination petitions, and the paternity tests were arranged. The tests confirmed Father's paternity in October 1995, and he again requested visitation.

Three or four more visitation requests were made by Father in January and February 1996. From October 1993 until the time of trial in March 1996, Father did not provide the children any financial support nor did he have any contact with the children, other than on the day of the paternity tests, through letters, cards, gifts, or phone calls.

Testifying on his own behalf, Father admitted that he only wanted contact with the children but not custody because he was financially unable to support them. The trial court terminated Father's parental rights in T.T. and T.T. on September 6, 1996, and ordered the children to remain in the custody of DFS. This appeal followed.

### STANDARD OF REVIEW

A trial court's order terminating parental rights will be upheld on appeal unless no substantial evidence supports the order, it is contrary to the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing the sufficiency of the evidence to support parental rights termination, an appellate court views

---

1. During oral argument before this court on July 23, 1997, counsel argued that the circuit court's unwritten policy provides that when a petition to terminate parental rights is filed, the status quo existing when the petition is filed remains in effect until the petition is ruled. The social worker assigned the case by the Division of Family Services testified at the trial on the Petition to Terminate Parental Rights that such is the court's policy. The petition to terminate parental rights may pend for a year or more, and the court does not entertain motions to alter the status quo at the time the petition was filed. Such policy, if it exists, practically terminates the visitation rights of the party who has had little or no visitation afforded by the Division of Family Services after the agency received legal custody of the affected child without judicial review by the appropriate judge simply because the petition was filed by the agency. Such policy may have the practical effect of inappropriately abdicating the judicial function and illegally deferring judicial authority to the executive agency.

the facts and all reasonable inferences drawn therefrom in the light most favorable to the trial court's order. *In Interest of J.M.L.,* 917 S.W.2d 193, 195 (Mo.App.1996). An appellate court will reverse the termination of parental rights only when left with a firm belief that the judgment is wrong. *Id.*

A parent's rights may be terminated by the trial court where termination is in the best interests of the child and clear, cogent and convincing evidence of one or more of the statutory grounds for termination exists. *Id.*; § 211.447.2, RSMo 1994.[2] Clear, cogent and convincing evidence is that evidence which "instantly tilts the scales in favor of termination when weighed against the evidence in opposition." *In Interest of D.A.H.,* 921 S.W.2d 618, 621 (Mo.App.1996).

## DISCUSSION

The trial court terminated Father's parental rights based on the statutory grounds of abandonment, section 211.447.2(1), and neglect, section 211.447.2(2)(d). The court found that Father had not had any contact, communication, or visitation with T.T. and T.T. since September 1993, with the exception of a brief contact in August 1995, and that he had consistently indicated that he did not want custody of the children. The court concluded that Father had repeatedly and continuously, although physically able, failed to provide the children with adequate food, clothing, shelter, and other care and control necessary for their physical, mental, and emotional health and development.

Section 211.447.2(1) provides for the termination of the rights of a parent to a child if the termination is in the child's best interest and clear, cogent and convincing evidence shows that the child has been abandoned. A child has been abandoned if for a period of six months or longer for a child over one year of age, "[t]he parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so." § 211.447.2(1)(b). Section 211.447.2(2) provides for termination of parental rights where termination is in the best interests of the child and the child has been adjudicated to have been neglected. Neglect is the "[r]epeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for his physical, mental, or emotional health and development." § 211.447.2(2)(d).

The evidence presented in this case justified the termination of Father's parental rights in T.T. and T.T. Father made no provisions for parental support of the children nor did he attempt to provide food, shelter, or education for the children. Additionally, he did not have any contact or communication with the children for approximately a year and a half prior to the filing of the petition to terminate his parental rights. He admitted at trial that he did not want custody of the children.

Father contends that his lack of contact with the children does not support termination because he requested visitation with the children beginning in November 1995 after the paternity tests were performed but was denied it. This contention is unpersuasive. First, the evidence discloses that Father openly acknowledged his paternity to DFS social worker prior to his request for paternity tests. Secondly, even had Father received visitation privileges with the children beginning in November 1995, that short-term improvement in circumstances which occurred after the filing of the termination petition would not have been compelling. *In Interest of S.H.,* 915 S.W.2d 399, 404 (Mo.App.1996). A parent's conduct after the filing of the termination petition cannot constitute the sole consideration of the trial court's decision. *In Interest of J.M.L.,* 917 S.W.2d 193, 196 (Mo.App.1996). All grounds for termination must to some extent look to past conduct because the past provides vital clues to present and future conduct. *Id.* Otherwise, a parent may argue that he has reformed since the filing of the petition; reformation having occurred while the child was away. *Id.* Father's history

**2.** All statutory references are to RSMo 1994 unless otherwise indicated.

regarding the children included little to no communication and demonstrated lack of commitment to the children. The trial court's determination that Father abandoned and neglected the children and that termination was in their best interests was supported by clear, cogent and convincing evidence.

The judgment of the trial court is affirmed.

All concur.