24 S.W.3d 771 (2000)
In the Interest of N.M.J., C.L.J., and C.L.J.
Juvenile Officer, Respondent,
v.
L.L.J. (Natural Mother) and Scott L. Campbell (Guardian ad litem), Appellants,
W.F.J. (Natural Father), J.C.B. (Natural Father), John Doe (Unknown Father), J.E.J. (Presumptive Father), Defendants.
No. WD 57487.
Missouri Court of Appeals, Western District.
August 8, 2000.
*773 Tammy Jo Glick, Platte City, for Respondent.
Sandra P. Ferguson, North Kansas City, for Appellant L.L.J.
Scott L. Campbell, Platte City, Appellant and Guardian ad litem.
Before: EDWIN H. SMITH, P.J., and LOWENSTEIN and HOLLIGER, JJ.
EDWIN H. SMITH, Presiding Judge.
L.L.J. and Scott L. Campbell, the guardian ad litem, appeal the judgment of the juvenile court terminating L.L.J.'s parental rights, pursuant to § 211.447.4,[1] to *774 C.L.J., C.J.,[2] and N.M.J.
L.L.J. raises three points on appeal. She claims that the juvenile court erred in terminating her parental rights, pursuant to § 211.447.4, because: (1) in doing so, it admitted and relied upon inadmissible evidence consisting of "the court report prepared by Jana Scott which included hearsay testimony and hearsay documents of James Neuerburg who's [sic] testimony had been excluded, as well as various other hearsay documents and hearsay testimony"; (2) the termination was not supported by clear, cogent, and convincing evidence; and (3) its required finding that the termination of her parental rights was in the children's best interests was against the weight of the evidence. The guardian ad litem did not join with L.L.J. in her claim in Point I, expressly claiming to the contrary. However, he did join with her in her claims in Points II and III, while also claiming in Point II that the juvenile court erred because it failed to make the requisite findings pursuant to § 211.447.4(2), (3), and § 211.447.6.
We reverse and remand.

Facts
L.L.J. (mother) is the natural mother of C.L.J., born on March 12, 1989; C.J., born on August 22, 1990; and N.M.J., born on August 5, 1991. On May 22, 1996, Mark Lindsay, the juvenile officer for Platte County, Missouri, filed petitions in the Circuit Court of Platte County for protective custody on behalf of all three children, requesting the court to immediately assume custody because the mother had been "arrested ... for probation violation warrants and there was no suitable person to care for the [children] while she was detained," "the Missouri Division of Family Services has received reports of unsanitary living conditions regarding the home of [the mother] ... and educational neglect of ... [C.L.J.]," and the children had "no custodian or other suitable person to provide care and supervision necessary for the best interest and welfare of [the children], and [the children are], therefore, homeless, dependent-neglected." In response to the petition, the juvenile court appointed Scott Campbell as the children's guardian ad litem (GAL). Following a hearing on May 22, 1996, the juvenile court sustained the petitions and placed all three children in the temporary custody of the Missouri Division of Family Services (DFS) "for alternative care placement under the supervision of the Court and [DFS]."
On June 11, 1996, the juvenile officer filed first amended petitions on behalf of all three children alleging, inter alia, that on or about September 24, 1994, the DFS "investigated and later substantiated an abuse and neglect hotline report for lack of supervision, alleging that [L.L.J.], mother of the [children], had left the [children] alone with an eight (8) year old baby sitter." He also alleged that since November 1995, DFS had attempted to provide services to the mother "due to a substantiated abuse and neglect report however [she] failed to fully cooperate with services." After a hearing on the petitions on August 28, 1996, the juvenile court entered its "Finding of Jurisdiction and Order of Disposition," sustaining the petitions on September 4, 1996, finding that the court had jurisdiction over the children and that they were in need of care and treatment under its supervision. The court placed them in the care, custody, and control of the DFS, with actual physical placement to their maternal aunt.
On November 7, 1996, the juvenile officer filed a "Motion to Modify Previous Order of Disposition," requesting that the children be removed from placement with their aunt and remain in the care, custody, and control of the DFS for appropriate *775 alternative care placement. The juvenile court held a detention hearing on November 8, 1996, and on November 12, 1996, entered an "Order of Detention," pending a hearing on the juvenile officer's motion, finding that it was contrary to the children's welfare to remain in their aunt's home. The court detained the children in the temporary care, custody, and control of the DFS for alternative care placement. On January 8, 1997, a hearing on the motion to modify was held, after which the court found that the children should remain in the care, custody, and control of the DFS for alternative care placement.
In or about May 1997, the mother was released on parole.[3] On October 3, 1997, she entered into a written service agreement with the DFS, which was approved by the court on October 20, 1997. In or about August 1997, she was required to take a drug test as part of her service agreement, and the results came back positive for cocaine. On December 30, 1997, her parole was revoked because of her use of cocaine, and she was returned to prison.[4]
On February 4, 1999, the juvenile officer filed petitions to terminate the mother's parental rights to all three children.[5] At that time, she was still incarcerated. As a result of the petitions, the court ordered an investigation and social study to be done by the DFS in accordance with § 211.455.3. Jana Scott, a DFS social service worker, conducted the investigation and social study, and issued a report with respect to the same. A hearing was held on the petitions on April 16, 1999. At the hearing, the court admitted the report into evidence over the hearsay objection of the mother.
Dr. Kathy Harms, a licensed psychologist, testified at the hearing that she performed a bonding assessment of the three children to determine if they were bonded with their mother and each other. She testified that she interviewed each of the children and asked them to draw pictures of their family. She further testified that as a result of her interviews with the children, she concluded that they had "bonded to the idea of having a mother and of having a family," but had not "necessarily bonded to this particular person," explaining that
[t]hese kids desperately need and want a mother, any mother, in their lives. They want a home. They want some permanency in their lives. They want a house to live in, not a group home, not another place where they keep moving from place to place. They want a stable environment and a mom.
Dr. Harms also testified that C.J. was bonded with N.M.J., but that the children were not bonded otherwise with each other.
Ada Silvey, a DFS licensed clinical social worker, counseled all three of the children for three months sometime after they were placed in DFS custody. She testified at the hearing that C.L.J. appeared not to be bonded with his mother or siblings and that he needed permanency in his life with a family. Silvey also testified that C.J. was connected with her mother and her siblings and that N.M.J. needed permanency in her life and had a "severe need *776 for a family." She further testified that, in her opinion, it was in the best interests of all three children that the mother's parental rights be terminated, but agreed that she did not know whether, as of the date of the hearing, the mother was being rehabilitated and capable of making a home for her children.
Cindy Schultz, who worked for the Buchanan County DFS, testified at the hearing that she was assigned to the children's case on July 17, 1998, and had worked with them since that time. She testified that they seemed detached from their mother and, at least in her presence, showed little interest in talking with their mother or writing letters to her.
Kelly Pentecost, who was the mother's parole officer from May 5, 1997, to December 30, 1997, testified that the mother told her on four occasions during that time period that she had used cocaine and told her on one occasion in June 1997 that she had purchased cocaine. Pentecost testified that she recommended that the mother enter into a substance abuse program. In that regard, she further testified that on June 26, 1997, the mother told her that she had contacted Jim Neuerburg, a certified substance abuse counselor with whom she entered into a treatment program, but she did not complete. Pentecost further testified that the mother violated the conditions of her parole several times by purchasing and using cocaine, and failing to complete a substance abuse program, attend counseling, and maintain employment. She also testified that the mother told her that she did not attend counseling because she could not pay for the sessions.
Jana Scott testified that the mother entered into a written service agreement with the DFS, but failed to comply with the agreement and that the services provided by the DFS, in an attempt to reunite her with her children, had not eliminated the need for their continued removal from the mother's home. Scott also testified that the mother had been unable to maintain a drug-free lifestyle, avoid incarceration, maintain stable employment, or make sufficient progress in family therapy to allow her to be with her children. Specifically, she testified while she began drug treatment counseling with Neuerburg sometime during summer 1997, she missed several of her appointments with him and did not complete his program. She also testified that she was enrolled in the Pathways Drug Treatment Program from November 14, 1997, to December 16, 1997, and, at the time of her discharge, had made only minimal progress toward being rehabilitated. She testified that the mother called her on December 30, 1997, and admitted that she had used drugs the previous evening.
Scott testified that on September 25, 1998, while incarcerated at the Women's Eastern Reception Diagnostic Center, the mother started drug treatment at Gateway Foundation, which was a very intense program, and that her participation in the program was voluntary. She understood that her prognosis, as to successful completion of the program, was guarded, but did agree that a March 24, 1999, report from the department of corrections stated that the mother had progressed well in her treatment and was scheduled to be released from the program sometime soon. She further testified that she believed termination of L.L.J.'s parental rights was in the children's best interests, that they needed the stability of a permanent home, and that there were possible adoptive homes for all three children. She stated that the children seemed to have a lack of bonding or a lack of attachment to anyone at that time and were not bonded with their mother because of the amount of time they had spent away from her.
The mother testified that she started using cocaine in 1995 or 1996 and had continued doing so until she was returned to prison in December 1997, but had not used any drugs since that time. She also testified that she did not complete the drug treatment program with Neuerburg because she could not afford to attend all *777 of the counseling sessions. Further, she testified that she was scheduled to be released from the Gateway Foundation drug treatment program on June 23, 1999, and would then spend four months living in a halfway house. At the conclusion of the hearing, the juvenile court took the matter under advisement.
On June 2, 1999, the juvenile court entered its judgment terminating the mother's parental rights to all three children. The mother filed her notice of appeal on July 2, 1999. On April 12, 2000, the GAL filed a motion, requesting that he be allowed to become a party to the appeal, which was sustained on April 17, 2000.

I.
Because we find that Point II is dispositive of the appeal, we address it alone.
In Point II, both the mother and the GAL claim that the juvenile court erred in terminating the mother's parental rights, pursuant to § 211.447.4, because termination was not supported by clear, cogent, and convincing evidence, as required. In addition, the GAL claims that the juvenile court erred in terminating the mother's parental rights because in doing so it failed to make the findings required by § 211.447.4(2), (3), and § 211.447.6. We first address the appellants' claim that the evidence was insufficient to support termination of the mother's parental rights.

A. Sufficiency of Evidence
"A trial court's decision to terminate parental rights will be affirmed on appeal unless the record contains no substantial evidence to support the decision, the decision is against the weight of the evidence, or the trial court erroneously declares or applies the law." In re A.H., 9 S.W.3d 56, 59 (Mo.App.2000). "In reviewing a trial court's decision, an appellate court views the evidence and its reasonable inferences in a light most favorable to the decision." Id. "An appellate court also defers to a trial court's ability to determine the witnesses' credibility and to choose between conflicting evidence." Id.
Section 211.447, governing the termination of parental rights, provides, in pertinent part:
5. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer or the division, ... if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 3 or 4 of this section.
"`Clear, cogent and convincing evidence in an action for termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true.'" In re A.H., 9 S.W.3d at 59 (quoting In re R.K., 982 S.W.2d 803, 806 (Mo.App.1998)). "This test may be met despite the presence of contrary evidence before the court." In re J.W., 11 S.W.3d 699, 703 (Mo.App.1999).
In this case, the juvenile court terminated the mother's parental rights based on the two statutory grounds found in § 211.447.4(2), "abuse and neglect," and § 211.447.4(3), "failure to rectify or remedy." "[I]n a termination of parental rights proceeding, one of the grounds for termination, if adequately pleaded and proved, is sufficient to support termination." In re L.T., 989 S.W.2d 673, 677 (Mo.App.1999). Because we find, infra, that the evidence was sufficient to support termination of the mother's parental rights pursuant to § 211.447.4(3) for failure to remedy, we need not address whether the evidence was also sufficient to support termination under § 211.447.4(2) for abuse and neglect.
Section 211.447.4(3) provides, as a ground for termination of parental rights, that:
(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that *778 the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings of the following:
(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control....
(Emphasis added.) In determining whether to terminate parental rights under § 211.447.4(3), the court is required to consider and make findings as to the four conditions specified in subparagraphs (a) through (d). § 211.447.4(3)(a)-(d); In re S.C., 914 S.W.2d 408, 411 (Mo.App.1996). "`These factors are not separate grounds for termination in and of themselves but rather categories of evidence to be considered together with all other relevant evidence.'" In re J.M., 815 S.W.2d 97, 102 (Mo.App.1991). "Although the court is required to consider and make findings as to all four conditions or acts, the proof of one is sufficient for termination." In re S.C., 914 S.W.2d at 411. Because we find that the evidence was sufficient to support termination of the mother's parental rights pursuant to § 211.447.4(3), based on a finding of chemical dependency under § 211.447.4(3)(d), we need not address the sufficiency of the evidence as to the other conditions.
In terminating the mother's parental rights, pursuant to § 211.447.4(3), the juvenile court found:
That [the mother], through her own testimony, and the evidence, had a chemical dependency which prevented her from providing the necessary care, custody, and control of the juveniles ... and the previous treatment she received did not enable her to consistently provide such care, custody and control.
...
That the juveniles ... have been under the jurisdiction of the Juvenile Division, Sixth Judicial Circuit, County of Platte, State of Missouri, for a period of over one year and that the conditions of a potentially harmful nature continue to exist; that there is little likelihood that the conditions of a potentially harmful nature will be remedied at an early date so that the juveniles ... can be returned to [the mother] in the near future; and that the continuation of the parent-child relationship greatly diminishes the juveniles[`] prospects for early integration into a stable and permanent home.
...
That [the mother] failed on a continuing basis to rectify the conditions which lead [sic] to the assumption of jurisdiction and ... will not, even if given more time, rectify those conditions on a continuing basis and the Missouri Division *779 of Family Services has used reasonable, diligent, and continuing efforts together with other agencies to aid [the mother] to rectify the conditions and provide on a continuing basis a proper home for the juveniles....
That efforts of the juvenile office and the Missouri Division of Family Services to aid [the mother] on a continuing basis in adjusting to circumstances and conduct to provide a proper home for the juveniles, have failed due to [the mother's] refusal and lack of cooperation in the following respects:
a) [the mother] has failed to provide stable housing or maintain employment in order to care for and support the juveniles.
b) [the mother] has failed to provide financially for the juveniles.
c) [the mother] has been involved with or used illegal drugs and substances.
d) [the mother] has failed to remain drug free, and failed to successfully complete drug treatment and counseling programs.
e) [the mother] has failed to comply with the terms and conditions of her parole and was returned to prison and is now incarcerated in the custody of the Missouri Department of Corrections.
f) [the mother] has neglected the education of the juveniles.
...
That due to [the mother's] refusal of services and lack of cooperation with services provided, additional services would not bring about lasting parental adjustment enabling a return of the juveniles to [the mother] within an ascertainable period of time.
The mother and the GAL do not dispute that, at the time of the court's termination of her parental rights, the children had been under the jurisdiction of the juvenile court for a period of more than one year nor do they dispute that in the past she had a chemical dependency which prevented her from providing the necessary care, custody, and control over her children. Instead, they contend that the evidence was insufficient to find that her cocaine addiction could not be successfully treated so as to enable her to provide such care, custody, and control in the future, pointing to the evidence at the termination hearing that she would soon be successfully completing a drug treatment program and had not used drugs since her return to prison in late December 1997.
The record reflects that the mother became addicted to cocaine in 1995 or 1996 and had made several unsuccessful attempts at rehabilitation. As to those attempts, the record reflects that in the summer of 1997, she entered into a treatment program with Neuerburg, which she did not complete. The record also reflects that in or about August 1997, she was required, presumably as a condition of parole, to take a drug test, which came back positive for cocaine. In a further attempt to conquer her addiction, the mother was enrolled in the Pathways Drug Treatment Program from November 14, 1997, to December 16, 1997. However, at the time of her discharge, she had made only minimal progress toward being rehabilitated. In fact, on December 30, 1997, shortly after being discharged, she reported to a DFS worker that she had used drugs the previous evening. From this evidence of past failures at treatment, the juvenile court could have reasonably inferred that any further treatment would not be successful in rehabilitating the mother so as to allow her to adequately care for her children. In re S.C., 914 S.W.2d at 412.
While the mother testified at the hearing that she had not used drugs since her return to prison in late December 1997 and was committed to successfully completing the Gateway Foundation drug treatment program and remaining drug free in the future, the trial court was free to disbelieve her testimony. In re A.H., 9 S.W.3d at 59. In addition, the court simply may not have found her testimony *780 to be compelling. "[E]vidence of short-term improvements in a parent's circumstances which occur after the filing of the termination petition is not necessarily compelling...." In re J.W., 11 S.W.3d at 706; In re T.T., 954 S.W.2d 429, 432 (Mo. App.1997); In re S.H. v. M.F., 915 S.W.2d 399, 404 (Mo.App.1996). "A parent's conduct after the filing of the termination petition cannot constitute the sole consideration of the trial court's decision." In re T.T., 954 S.W.2d at 432; In re J.W., 11 S.W.3d at 706. "The court must look to the totality of a parent's conduct, both prior to and after the filing of the petition, `[o]therwise, a parent may argue that he [or she] has reformed since the filing of the petition; reformation having occurred while the child was away.'" In re J.W., 11 S.W.3d at 706 (quoting In re T.T., 954 S.W.2d at 432). "All grounds for termination must to some extent look to past conduct because the past provides vital clues to present and future conduct." In re T.T., 954 S.W.2d at 432. Given the juvenile court's disposition, we can assume that it either disbelieved her testimony or found it was not compelling, either of which the court was free to do.
Based on the record presented, we find that there was clear, cogent, and convincing evidence from which the juvenile court could find that the mother had an untreatable chemical dependency which prevented her from exercising consistent care, custody, and control over her children. Hence, the court's decision to terminate the mother's parental rights pursuant to § 211.447.4(3), based on a finding of chemical dependency under § 211.447.4(3)(d), was supported by clear, cogent, and convincing evidence.
Having found that there was sufficient evidence to support the juvenile court's termination of parental rights pursuant to § 211.447.4(3), we now turn to the claim of the GAL that the juvenile court failed to make the requisite findings to support termination.

B. Sufficiency of the Findings
The GAL claims that we are required to reverse and remand because the trial court failed to make the findings required by § 211.447.4(2), (3), and § 211.447.6. We agree.
As discussed, supra, the juvenile court terminated the mother's parental rights on the statutory grounds found in § 211.447.4(2) and § 211.447.4(3). "[I]n a termination of parental rights proceeding, one of the grounds for termination, if adequately pleaded and proved, is sufficient to support termination." In re L.T., 989 S.W.2d at 677. As such, because we found, supra, that the evidence was sufficient to support the mother's parental rights pursuant to § 211.447.4(3), we need not address whether the court's findings were adequate under § 211.447.4(2) and limit our discussion to the adequacy of the findings required of the juvenile court under §§ 211.447.4(3) and 211.447.6.

1. Sufficiency of Findings as to § 211.447.4(3)
Section 211.447.4(3) provides:
4. The juvenile officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:
...
(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, *781 the court shall consider and make findings of the following:
(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control....
As to the requisite findings of § 211.447.4(3), the GAL does not challenge the juvenile court's findings with respect to the conditions found in subparagraphs (b) and (c) of the subdivision, but challenges only its findings with respect to the conditions found in subparagraphs (a) and (d).
Under § 211.447.4(3), the court is required to consider and make findings as to the four conditions specified in subparagraphs (a) through (d), even if only to state that the condition is irrelevant. § 211.447.4(3)(a)-(d); In re K.E., 947 S.W.2d 468, 470-71 (Mo.App.1997); In re T.S. v. T.S, 925 S.W.2d 486, 489 (Mo.App. 1996). "[T]he power given the juvenile court to terminate parental rights is purely statutory...." In re A.P., 988 S.W.2d 59, 60 (Mo.App.1999). As such, the "severance of a parent-child relationship demands literal compliance with the statutory authority from which the power is derived." Id.; In re S.L.N., 8 S.W.3d 916, 920 (Mo.App.2000). Thus, "[s]tatutory mandates to make findings may not be overlooked on appeal." In re A.P., 988 S.W.2d at 62; In re D.T.B., 944 S.W.2d 321, 323 (Mo.App.1997) (citing In re J.M., 789 S.W.2d 818, 822 (Mo.App.1990)).
In regard to § 211.447.4(3)(a), the court found that "[the mother] failed to reasonably comply with an appropriate social service plan dated October 3, 1997. Said plan was approved by this Court and [the mother] was notified of the plan." The GAL contends that this finding "is not sufficient to satisfy the required findings in that it does not indicate the terms of the social service plan, nor does it indicate the extent to which the parties have made progress in complying with those terms." We disagree.
What the GAL seems to be contending, with respect to the requisite finding as to the terms of the social service plan, is that the court was required to set forth each and every term of the plan in its judgment. Contrary to the GAL's contention, giving the language of § 211.447.4(3)(a) its plain and ordinary meaning, EBG Health Care III, Inc. v. Missouri Health Facilities Review Comm., 12 S.W.3d 354, 358 (Mo.App.2000), we do not read it as requiring the court, in every instance, to quote verbatim in its judgment all the terms of the plan, in this case a plan consisting of some three pages. Rather, it is our interpretation that the statute (recognizing that in many cases more than one plan is implemented) requires the court to make a finding which sufficiently identifies the plan and the terms thereof, when determining and finding the extent to which the parties have made progress in complying with such terms. This is in keeping with what we view as the apparent purpose of § 211.447.4(3), which is to ensure that the juvenile court was aware of and had properly considered, in deciding whether to *782 terminate parental rights, whether all reasonable means were employed to help the parent remedy the adverse conditions to no avail. See In re R L K, 957 S.W.2d 778, 782 (Mo.App.1997) (holding that the "apparent purpose of those two paragraphs [§ 211.447.4(3)(a), (b) ] is to ensure that all reasonable means to help the parents remedy the adverse conditions are utilized, and that courts will not terminate parental rights where such efforts have not been made"). Our interpretation is also based on a belief that the "provisions of the statute authorizing termination must be read with a measure of common sense and reasonableness, and not interpreted in a hyper-technical fashion." In re J.W., 11 S.W.3d at 704.
In this case, the court not only identified the mother's social service plan by date in its finding, but also further found that it had approved the plan and that the mother had been given notice of the same. In addition, the record reflects that the plan was admitted in evidence at the hearing and inquiry was made of the mother by the attorney for the juvenile officer concerning the same. Given these circumstances, there can be no doubt that the juvenile court was aware of the exact terms of the plan in determining what progress was made by the mother in complying with the same such that its finding with respect to the terms of the plan satisfied the findings requirement of § 211.447.4(3)(a), as we interpret it.
As to the GAL's claim that the juvenile court's finding with respect to the extent to which the mother had made progress in complying with the terms of her service plan was not sufficient, we disagree. Other than citing the statute and concluding in one sentence in his brief that the court's finding in this respect did not comply with it, the GAL does not offer any further authority or argument for his contention. Although we recognize that the court did not go into any detail in finding that "[the mother] failed to reasonably comply with an appropriate social service plan dated October 3, 1997," in our view, such a finding does indicate the "extent" to which the court believed the mother had made progress in complying with the service plan, that being, in effect, "no" progress. Logically, we are constrained to find that a finding of "no" progress is, in fact, a measure of the extent of the mother's progress, such that the juvenile court's finding was not deficient as claimed by the GAL, requiring us to reverse and remand for further findings.
With respect to the sufficiency of the juvenile court's findings as to § 211.447.4(3), the GAL also claims that it failed to make the findings required by subparagraph (d) of § 211.447.4(3). In this regard, the juvenile court found "[t]hat [the mother], through her own testimony, and the evidence, had a chemical dependency which prevented her from providing the necessary care, custody, and control of the juveniles ... and the previous treatment she received did not enable her to consistently provide such care, custody and control." The court further found, in this regard, that the efforts of the DFS to aid her had not been successful because she had "failed to remain drug free, and failed to successfully complete drug treatment and counseling programs." The GAL claims that these findings were not adequate because they were "devoid of any finding regarding whether or not Appellant's chemical dependency can be treated so as to enable [her] to consistently provide such care, custody and control." We disagree.
In challenging the juvenile court's § 211.447.4(3)(d) finding, the GAL is contending that it only speaks to the mother's "previous" treatment and does not indicate the court's opinion as to whether she could be treated now so as to enable her to consistently provide care, custody, and control over her children. Unlike the GAL, we believe that any fair reading of the court's findings reflect that, based on the mother's past failures to successfully *783 complete drug treatment programs and to remain drug free, her chemical dependency could not be treated so as to enable her to consistently provide care, custody, and control over her children. Hence, we find that the court's § 211.447.4(3)(d) finding was sufficient to terminate the mother's parental rights.

2. Sufficiency of § 211.447.6 Findings
The GAL also claims that in terminating the mother's parental rights, the juvenile court failed to make the findings required by § 211.447.6. We agree.
Section 211.447.6 provides:
6. When considering whether to terminate the parent-child relationship pursuant to subsection 2 or 3 of this section or subdivision (1), (2), (3) or (4) of subsection 4 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:
(1) The emotional ties to the birth parent;
(2) The extent to which the parent has maintained regular visitation or other contact with the child;
(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so ...
(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;
(5) The parent's disinterest in or lack of commitment to the child;
(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;
(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.
Unlike § 211.447.4(3), § 211.447.6 "contains no mandatory language directing the juvenile court to make specific findings with respect to each of its subparagraphs." In re M.M., 973 S.W.2d 165, 169 (Mo.App. 1998); In re J.W., 11 S.W.3d at 705. Instead, it only requires the court to make findings on the listed factors "when appropriate and applicable to the case." § 211.447.6.
The record reflects, and the GAL agrees, that the court did make findings as to factors (1), (3), and (4) of § 211.447.6. The record also reflects that factor (7) was inappropriate and inapplicable. Likewise, a good case could be made for the fact that findings as to factor (6) were inappropriate and inapplicable in that there was no evidence or argument that the mother was convicted of a felony for which she was going to be incarcerated for a "period of years," such that she could not provide for the custody, care, and control of her children during that period of time. However, as to factors (2) and (5), the record does not disclose any findings thereon, although they were appropriate and applicable in that there was evidence presented on them, which arguably would favor the mother. This failure of required findings not only flies in the face of the letter of § 211.447.6, but the spirit of the same, in that without such findings we cannot be assured that the juvenile court properly considered these two factors in deciding whether to terminate the mother's parental rights. As such, we are required to reverse the juvenile court's judgment terminating the mother's parental rights and remand the case to the juvenile court. In re D.T.B., 944 S.W.2d at 324; In re A.P., 988 S.W.2d at 62.

Conclusion
The judgment of the circuit court terminating the parental rights of the mother to C.L.J., C.J., and N.M.J., pursuant to *784 § 211.447.4, is reversed and the cause remanded to the court with directions to consider the record herein and enter its findings and judgment in accordance with § 211.447.
LOWENSTEIN and HOLLIGER, JJ., concur.
NOTES
[1] All references to § 211.447 are to RSMo Supp.1998. All other statutory references are to RSMo 1994, unless otherwise indicated.
[2] Because two of the children have the same initials, C.L.J., we will refer to the older of the two as C.L.J., and the other as C.J.
[3] The words "parole" and "probation" have been used interchangeably in the records of this case and in the testimony at trial. As such, it is unclear from the record on appeal whether the mother was on probation or parole. However, her status as being on probation or parole is not significant to the issues presented in this case.
[4] The record does not indicate the criminal offense of which the mother was convicted or her sentence and the balance of her sentence that was left to be served as a result of her parole revocation.
[5] The petitions identified J.J. as the father of C.L.J., as well as the presumptive father of C.J. and N.M.J. The petitions also stated that the mother had identified J.B. as C.J.'s biological father and W.J. as N.M.J.'s biological father. In its judgment on June 2, 1999, the juvenile court terminated the parental rights of J.J., J.B., and W.J. None of them appeal the court's judgment.