**In the Interest of N.J.S. and A.D.S.**

**No. ED 90936.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

Feb. 3, 2009.

Mark D. Potts, Hannibal, MO, for Appellant.

Joseph A. Brannon, Andrew W. Briscoe, New London, MO, for Respondent Juvenile Officer.

Thomas R. Motley, Hannibal, MO, for Respondent Guardian Ad Litem.

## OPINION

GLENN A. NORTON, Judge.

Mother appeals the judgments terminating her parental rights to N.J.S. and A.D.S.[1] We affirm.

## I. BACKGROUND

Mother is the mother of N.J.S., a daughter born on April 13, 2007, and A.D.S., a son born on August 28, 2005. On June 7, 2007, N.J.S. was taken to the hospital to be treated for severe life threatening injuries. The extensive list of injuries included multiple bruises of the skin, skull fractures, impact injury to the substance of the brain (brain contusions), bruising of the lungs (pulmonary contusion), broken ribs, bleeding into the lining of the brain, midline shift of the brain to one side caused by brain swelling, liver laceration, and a pelvic bone fracture. N.J.S. and her brother A.D.S. were taken into the custody of the Children's Division on June 21.

Once the children were in the Division's custody, the juvenile court entered a judgment and order of disposition following a permanency hearing. After finding that N.J.S. was taken into custody in an emergency situation, the court explained that as of July 23, 2007, the Division was relieved of providing reasonable efforts toward reunification under section 211.183.7 RSMo 2000.[2]

The juvenile office filed petitions for termination of Mother's parental rights to N.J.S. and A.D.S. on August 20, 2007.

---

1. The individual cases for each child were consolidated for this appeal.

2. All statutory references are to RSMo 2000. Section 211.183.7(1) provides that the Division is not required to make reasonable efforts to prevent or eliminate the need for removal of the child or to work toward reunification of the child with the parent if the juvenile court finds that the parent has subjected the child to a severe act of physical abuse.

The petitions were based on section 211.447.4(2), which allows parental rights to be terminated where the child has been abused and neglected, and section 211.447.4(6), which allows parental rights to be terminated where the parent is unfit to be a party to the parent and child relationship. The petitions also alleged that termination of Mother's parental rights was in the best interests of the children.

At the hearing on the termination petitions, counsel for the juvenile office questioned Mother as to the cause of N.J.S.'s injuries. According to Mother, she left the children with her boyfriend, while she went to buy ice cream. When she returned, N.J.S. was "having seizures" so she called 911. Mother's boyfriend told her that N.J.S. was sitting in her car seat when A.D.S. tipped her over. She also thought A.D.S. may have injured N.J.S. by hitting her in the head with a plastic toy. Mother acknowledged that she no longer believed her boyfriend's story regarding how the injuries occurred, but maintained that she could not say what really happened since she was not there.

Robert Paschal, M.D., a pediatrician specializing in child abuse pediatrics, treated N.J.S. for her injuries. He testified about the nature and severity of the injuries, indicating that if they were left untreated, N.J.S. would have died. Dr. Paschal explained that N.J.S.'s injuries were caused by force sufficient enough that the person inflicting the injury would know it would likely result in severe injury. He stated that Mother and her boyfriend did not offer any plausible explanation as to the cause of N.J.S.'s injuries. He opined that, within a reasonable degree of medical certainty, N.J.S. was a victim of physical abuse. Finally, Dr. Paschal testified that he found evidence of an additional injury— a single healing rib fracture that was ten to fourteen days older than the injuries of June 6.

Other testimony at the hearing revealed that Mother's boyfriend was physically abusive toward Mother prior to June 7, 2007. Although Mother testified that her boyfriend was never violent in front of the children, Mother's cousin stated that Mother's boyfriend hit Mother in front of the children on at least one occasion. Mother continued her relationship with her boyfriend for at least two months after N.J.S. suffered injuries and the children were taken into custody.

Once the children were in custody, Mother attended almost all of her one-hour-per-week supervised visits before being incarcerated on criminal charges, including assault and theft. On one occasion, Mother asked if her boyfriend could accompany her. On another occasion, Mother left early after arguing with her father. Division workers testified that Mother got along well with her children, although she had difficulty managing both at the same time. Mother testified that she visited a counselor to help her cope with depression and stress. Although Mother brought clothes, toothbrushes and toys to the children when she came to visit, she did not provide any financial support even at times when she was working.

All representatives of the juvenile office testified that they recommended termination of Mother's parental rights. They based this determination on Mother's inability to provide a plausible explanation for N.J.S.'s life-threatening injuries while she was in Mother's care. They also noted that Mother continued her relationship with her boyfriend despite his alleged involvement in N.J.S.'s injuries and his otherwise abusive nature. Finally, they raised concern about Mother's incarceration since, by committing crimes preventing her from being able to provide for

their needs, Mother demonstrated she was unable to put her children first. The children's guardian ad litem agreed that termination of Mother's parental rights was in the best interest of the children. The juvenile court entered judgments terminating Mother's parental rights to N.J.S. and A.D.S.[3] Mother appeals.[4]

## II. DISCUSSION

### A. Standard of Review

■ We will affirm the juvenile court's judgment terminating a parent's parental rights unless no substantial evidence supports it, it is contrary to the weight of the evidence, or it erroneously declares or applies the law. *In re P.L.O.*, 131 S.W.3d 782, 788–89 (Mo. banc 2004). We defer to the fact-findings of the juvenile court and consider all evidence and reasonable inferences in the light most favorable to the judgment. *Id.* at 789.

### B. Clear, Cogent and Convincing Evidence Supports the Juvenile Court's Finding that Grounds Exist for Termination of Mother's Parental Rights Under Section 211.447.4(2)

Mother argues in her first point that the trial court erred in terminating her parental rights to N.J.S. and A.D.S. because there was no clear, cogent, and convincing evidence to support a finding that she abused or neglected the children under 211.447.4(2). Section 211.447.4(2) permits the juvenile court to terminate a parent's parental rights when clear, cogent and convincing evidence indicates that the child has been abused or neglected. *See* section 211.447.5 (permitting the juvenile court to terminate a parent's parental rights when it appears by clear, cogent and convincing evidence that grounds for termination un-

der section 211.447.4 exist). "Clear, cogent and convincing evidence" is described as evidence that "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In re E.D.M.*, 126 S.W.3d 488, 492 (Mo.App. W.D.2004).

When determining whether a child has been abused or neglected under section 211.447.4(2), the court is required to make specific findings on each of the four factors listed in subsections (a) through (d). *In re K.A.W.*, 133 S.W.3d 1, 16 (Mo. banc 2004). Even if a factor is not relevant to the case, the court should state why the given factor is not relevant. *Id.* Here, the juvenile court specifically found that there was insufficient evidence to support a finding that the children were abused or neglected under the first two factors (i.e., that Mother suffers from a mental condition or a chemical dependency that renders her unable to care for the children under sections 211.447.4(2)(a) and (b)). However, the juvenile court found that compelling evidence supported a finding that the children were abused and neglected under sections 211.447.4(2)(c) and (d).

### 1. Evidence Supported a Finding that N.J.S. Suffered From a Severe Act of Abuse Under Section 211.447.4(2)(c)

■ Section 211.447.4(2)(c) requires the court to consider whether the parent has committed a

> severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent ... or by another under circumstances that indicate that the parent knew or should have known that such

---

3. The court's specific findings will be discussed below.

4. The fathers of each child do not appeal the judgments terminating their parental rights.

acts were being committed toward the child or any child in the family. . . .

The juvenile court listed specific incidents of abuse under this finding. In particular, the court noted that Mother failed to prevent the severe acts of abuse toward N.J.S. even though she knew or should have known that such acts were being committed. The court was concerned with Mother's testimony that she was afraid of her boyfriend and could not cease her relationship despite the threat he posed to her and her children. It also explained that Mother was aware of her boyfriend's abusive nature yet she allowed him to supervise the children in her absence. Finally, the court emphasized that the evidence showed N.J.S. had already suffered a rib fracture prior to the extensive injuries of June 6, 2007.

Mother argues that the evidence does not support a finding in favor of termination under section 211.447.4(2)(c) because "there is insufficient evidence to find that more than one act of abuse occurred." In doing so, she asserts that the only "incident" that could be considered physical abuse happened within a five to fifteen minute period. Mother also claims that there is no evidence she committed any abuse. She then interprets the statute as requiring more than one "act" of abuse to occur where someone other than the parent inflicts injuries since the statute uses the phrase "such *acts*" when discussing the significance of another's act of abuse toward a parent's child.

Mother cites no support for her contention that section 211.447.4(2)(c) requires a finding of more than one severe act of abuse when the abuse is inflicted by someone other than the parent. We agree with the appeals court in *In re N.M.J.*, 24 S.W.3d 771 (Mo.App. W.D.2000), which stated that "provisions of the statute authorizing termination must be read with a measure of common sense and reasonableness, and not interpreted in a hyper-technical fashion." *Id.* at 782 (internal citations omitted). Giving the statute its plain and ordinary meaning, *see N.M.J.*, 24 S.W.3d at 781, we find that the use of the word "such" refers back to both "severe act" and "recurrent acts." It would be unreasonable to treat the consequences of a severe act of abuse differently merely because the parent was not the person inflicting the abuse where the parent knew or should have known that the severe act was being committed. It is readily apparent where, as here, the "incident" to which Mother refers could have killed the child. We find that N.J.S.'s injuries, even if considered one "act" of abuse, were sufficient to support a finding of abuse under section 211.447.4(2)(c). Moreover, the trial court specifically found that an additional act of abuse occurred prior to the injuries of June 6 based on Dr. Paschal's testimony at trial. Mother's argument therefore fails.

**2. Evidence Supported a Finding that Mother Repeatedly and Continuously Failed to Provide for the Children Under Section 211.447.4(2)(d)**

■ Under section 211.447.4(2)(d), the juvenile court is required to consider whether there has been a

> [r]epeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development.

As with its findings regarding acts of abuse under section 211.447.4(2)(c), the court listed specific examples of Mother's failure to adequately provide for the children. The court stated that N.J.S. suffered severe life threatening injuries from either Mother or her boyfriend, and that

Mother maintained a relationship with her boyfriend even after the children were taken into judicial custody. The court found that Mother failed to provide her children with a home free of domestic violence, severe physical abuse, and emotional and physical maltreatment. It noted that Mother has been convicted of criminal offenses that occurred after the children were taken into custody at the time of the hearing, was being prosecuted for endangering the welfare of a child. Finally, the court found that even when Mother was gainfully employed prior to incarceration, she failed to provide financial support.

Arguing that the evidence does not support a finding that she failed to provide for her children, Mother cites to testimony indicating that she provided a clean home for the children when they lived with her and that she exercised almost all of her supervised visitations. She also emphasizes that she brought some items with her to the visits, including weather appropriate clothes, toys and a toothbrushes.

In relying solely on testimony in her favor, Mother misunderstands our standard of review. As stated above, we consider all evidence and the reasonable inferences therefrom in the light most favorable to the judgment. *P.L.O.*, 131 S.W.3d at 789. Clear, cogent and convincing evidence supports the trial court's detailed findings that Mother failed to adequately provide for her children. We will not disregard the evidence in favor of termination merely because evidence favorable to Mother appears in the record. Mother's first point is denied.[5]

## C. The Juvenile Court did not Abuse its Discretion in Finding that Termination of Mother's Parental Rights was in the Children's Best Interests Under Section 211.447.6

Mother argues in her third point that the evidence did not support a finding that termination of parental rights was in the children's best interests. In order to terminate a parent's parental rights, the juvenile court must find that termination is in the best interests of the child. Section 211.447.5. Under 211.447.6, the juvenile court shall make findings on several factors, when appropriate and applicable to the case, when considering whether to terminate a parent's parental rights pursuant to section 211.447.4(2). The juvenile court's finding of best interests is reviewed for abuse of discretion. *P.L.O.*, 131 S.W.3d at 789.

Considering the first factor under section 211.447.6(1), the court found that neither child had emotional ties to Mother as evidenced by their demeanor during visitation. The court was also concerned with Mother's criminal activity that may require her to be incarcerated for an extended period of time and Mother's choice to leave early during one of her one-hour visits with the children. Citing *In re C.W.*, 211 S.W.3d 93 (Mo. banc 2007), Mother argues that it is "not surprising" that she was unable to properly bond with her children given the early age at which N.J.S. was taken and the state of the visitation room. *See id.* at 101 (explaining that courts should take into account the reality

---

**5.** In her second point, mother contends that the trial court erred in terminating her parental rights because no clear, cogent and convincing evidence supports a finding that she was unfit to be a parent under section 211.447.4(6). However, one articulated statutory ground under section 211.447 is sufficient to support termination of parental rights

if properly pled and proved. *E.D.M.*, 126 S.W.3d at 492. Accordingly, because we hold that evidence supports a finding that grounds exist for termination under section 211.447.4(2), we need not reach mother's second point regarding section 211.447.4(6). Mother's second point is therefore denied.

that it is almost a foregone conclusion that the bond between and parent and a child taken only a few days after birth will not be as strong as it otherwise would). However, Mother's own actions contributed to her lack of emotional bond, particularly her relationship with an abusive boyfriend and her willingness to engage in criminal activity. The juvenile court's finding on this factor is therefore supported by the evidence.

The court cited the same concerns when discussing the second factor under section 211.447.6(2), finding that Mother had not maintained regular visitation or other contact with the children. As to the third factor under section 211.447.6(3), the court found that Mother did not provide financial support for the cost of care and maintenance of the children. As discussed above, the evidence supports a finding that Mother did not financially provide for the children.

■ Mother complains that the juvenile court unfairly reached its finding on the fourth factor, section 211.447.6(4), that additional services would not likely bring about lasting parental adjustment enabling a return of the child to her within an ascertainable period of time. She contends that the deputy juvenile officer testified that he did not advise her of parenting classes or domestic violence counseling and acknowledged that not much time passed between the court's assumption of jurisdiction and the juvenile office's petition for termination of Mother's parental rights. As set forth above, the record shows that the juvenile court found pursuant to section 211.183.7 that the Division was no longer required to make an effort toward reunification prior to the filing of the juvenile office's petition. Mother's complaint that the Division should have given her more assistance in reunification is therefore refuted by the record. Moreover,

generally, "the absence of treatment or services is no defense to a termination proceeding." *In re D.M.B.*, 178 S.W.3d 683, 688 (Mo.App. S.D.2005).

In arguing that the evidence does not support a finding that Mother is disinterested and lacks a commitment to the children under the fifth factor, section 211.447.6(5), Mother cites favorable testimony from her cousin and grandmother that she kept the children bathed, fed and clothed at her home. The juvenile court was entitled to give greater weight to Mother's actions in failing to provide a home free from domestic violence for her children, failing to protect N.J.S. from severe physical injuries, engaging in criminal activity, and continuing her relationship with her boyfriend even after the children were taken into protective custody.

As to the court's final finding under section 211.447.6(7), that Mother has been part of deliberate acts in which she knew or should have known subjected N.J.S. to a substantial risk of death, and serious physical or mental harm, Mother again argues that there is no proof she inflicted injuries on the child or that she knew her boyfriend was capable of doing so. In doing so, Mother disregards other evidence in the record indicating she was aware of her boyfriend's abusive nature. We will defer to the juvenile court's fact-findings in this regard. *P.L.O.*, 131 S.W.3d at 789. Mother's third and final point is denied.

### III. CONCLUSION

The trial court's judgment is affirmed.

NANNETTE A. BAKER, C.J., and CLIFFORD H. AHRENS, J., concur.