In the Interest of J.L.G., T.D.G., A.D.G., and M.A.G., Minors.

E.W.G., Natural Father, Appellant,

v.

DENT COUNTY JUVENILE OFFICE, Respondent.

Nos. SD 32090, SD 32091, SD 32092, SD 32093.

Missouri Court of Appeals, Southern District, Division One.

April 25, 2013.

---

David L. Simpson, St. James, MO, for appellant.

James A. Broshot, Steelville, MO, for respondent.

WILLIAM W. FRANCIS, JR., J.

■ E.W.G. appeals the judgment terminating his parental rights. We dismiss the appeal as to J.L.G.[1] Finding no merit in his seven points on appeal, we affirm the judgment of the Juvenile Division of the Circuit Court of Dent County (the "trial court") as to T.D.G., A.D.G., and M.A.G.

**Factual and Procedural Background**

■ "In reviewing a judgment terminating parental rights, this Court consider[s] the facts and reasonable inferences derived therefrom in a light most favorable to the judgment." *In re C.A.M.*, 282 S.W.3d 398, 401 (Mo.App. S.D.2009) (internal quotations and citations omitted). Viewed in that context, the following information is pertinent to this appeal. The record reveals that E.W.G. is the biological father of T.D.G., born October 22, 1997; A.D.G., born November 28, 1999; and M.A.G., born February 13, 2001 (collectively "the Children").[2]

While E.W.G. is not the biological father of J.L.G., Mother is the natural mother of all four children. J.L.G. had been living solely with E.W.G. and her siblings since 2006, when Mother left the home and moved to Iowa. Mother's whereabouts were unknown at the time of the hearing for termination of parental rights.

On April 21, 2010, J.L.G. and T.D.G. told their junior high school counselors and a police officer that E.W.G. had physically abused them. Both girls had bruises on their legs and arms, and J.L.G. also had several red marks on her arm that were suspected to be cigarette burns. Upon being taken to the police department for questioning about the allegations, E.W.G. refused to cooperate. He was then arrested and jailed. E.W.G. was charged with the class C felony of abuse of a child in violation of section 568.060 (Charge 1);[3] the class C felony of domestic assault in the second degree in violation of section 565.073 (Charge 2); the class C felony of abuse of a child in violation of section 568.060 (Charge 3); and the class C felony of domestic assault in the second degree in violation of section 565.073 (Charge 4).

On April 22, 2010, a "Petition," including an "Affidavit for Removal and Affidavit of Efforts Provided by Children's Division Section 211.183 RSMo[,]" was filed with the court by a Juvenile Officer with the Dent County Juvenile Office ("Juvenile Office") on behalf of all the children, alleging the children were in "need of the care and

---

1. It is the duty of this Court to determine the propriety of the appeal. *Krause v. Tullo*, 835 S.W.2d 488, 490 (Mo.App. S.D.1992). J.L.G. was included in the caption in E.W.G.'s appeal and a separate "Notice of Appeal" was filed for her. However, E.W.G. is not J.L.G.'s biological father. The parental rights of J.L.G.'s biological father were terminated on April 17, 2000. The only action the trial court took regarding J.L.G. was termination of the parental rights of J.L.G.'s biological mother ("Mother"). Mother is not a party to this appeal; therefore, we dismiss the separate Notice of Appeal for J.L.G. in that E.W.G. has no standing to assert parental rights for her. *See In re Q.M.B.*, 85 S.W.3d 654, 662 (Mo.App. W.D.2002) (holding a party has no standing to appeal unless he or she is an "aggrieved" party; an individual who is not a parent in the eyes of the law has no legal interest in the child and, therefore, has no standing to appeal). We refer to evidence about Mother and/or J.L.G. only as necessary to address E.W.G.'s appeal as to the other three children.

2. The individual cases for each child were consolidated for this appeal.

3. All references to statutes are to RSMo Cum. Supp.2011, unless otherwise indicated.

treatment of [the] [c]ourt."[4] Sara Lancaster ("Lancaster"), a caseworker with the "Dent County Children's Division," was assigned to the Children's case on the same day.

The petition alleged that E.W.G. "repeatedly whipped [J.L.G.] ... and [T.D.G.] ... with an extension cord or cable leaving extensive bruising" on said children; that E.W.G. had "burned [J.L.G.]'s arm with a cigarette," leaving approximately "seven round marks in various stages of healing[ ]"; "knocked [J.L.G. and T.D.G.]'s head[s] into the walls on more than one occasion[ ]"; "pulled T.D.G.'s hair"; and whipped A.D.G. and M.A.G. with a paddle. The petition also alleged the children reported the beatings or whippings were so frequent that they could not "remember a great deal of the reasons for the beatings[,]" and the abuse began after Mother left the home. The children reported E.W.G. did not "beat the boys and [treated] the girls differently than the boys."

This was not the first time the children had come into care as the result of abuse by E.W.G. E.W.G. pled guilty to two counts of assault in Iowa and as a result, there was a court order prohibiting E.W.G. from having contact with J.L.G. while on probation for these offenses. On July 30, 1997, the Children's Division in Grundy County, Iowa, was notified that Mother refused to abide by the order and E.W.G. was having contact with J.L.G., so the Iowa Children's Division took custody of J.L.G.[5] In October 1997, when T.D.G. was born, she was taken into protective custody when she was two days old because E.W.G. was living in the home with Mother. In 1998, when E.W.G. and Mother married, visits with J.L.G. and T.D.G. were suspended. The Iowa Children's Division had no further contact with E.W.G. and Mother until the birth of A.D.G. on November, 28, 1999, when he too was taken into custody at the age of two days. The record indicates that termination of parental rights "was sought on 8/21/00 but was denied by the Court."

The record also revealed that "an unexplainable death ... occurred with [E.W.G.]'s child of a prior marriage in the state of Kansas. The hospital reported that the child died of an illness and [E.W.G.] reported that the child was struck in the head by a rock from another child and put in a bag." Also mentioned was "a hotline received on 9/3/10 for other sexual abuse; lack of supervision ... due to [E.W.G.] showing the children pornographic material ... [which] was concluded as Unsubstantiated–Preventative Services Indicated"; an assessment relating to J.L.G. "received on 9/5/08 for Poor Hygiene" that was "concluded as Services Needed–Family Declined"; and an investigation "on 5/11/09 for bruises, welts, red marks" that was concluded as "Unsubstantiated."

On May 14, 2010, the trial court found the allegations against E.W.G. to be true, found all the children to have been abused by E.W.G., assumed jurisdiction of all the children, and placed all the children in the physical custody of the Children's Division of the Missouri Department of Social Services ("Children's Division") because an "emergency existed which placed [all the children] in imminent danger of serious physical harm or death." The trial court ordered E.W.G. to complete a psychologi-

---

4. It appears one petition, listing four different case numbers, was filed for all four children.

5. At the termination hearing, E.W.G. testified that in the 1990s while living in Iowa, J.L.G. was removed from his and Mother's care because "they said that she wasn't ... sufficiently being taken care of," and when they did "everything that the DFS asked us to," J.L.G. was returned to their custody.

cal evaluation and that visitation with the Children be supervised by Children's Division.

After gaining his release from jail, E.W.G. visited A.D.G. and M.A.G. every week at the office of Children's Division during May through September, 2010. E.W.G. was not allowed to see J.L.G. or T.D.G. due to the felony charges against him for child abuse.

On August 29, 2010, E.W.G. completed his court-ordered psychological evaluation with Dr. Frederick Nolen.[6] E.W.G. was diagnosed as having alcohol dependence with unknown remission, "[n]eglect of child, perpetrator," and antisocial personality disorder. Dr. Nolen stated he knew of no services or medication that "would improve or cause some sort of improvement" with E.W.G. Dr. Nolen recommended there be no further contact between E.W.G. and the Children and that his parental rights be terminated immediately.

E.W.G.'s last visit with any of the children was on September 22, 2010, when he saw A.D.G. and M.A.G. for an hour while under supervision at Children's Division. One week later, the trial court followed Dr. Nolen's recommendation and ordered no further contact between E.W.G. and the children.

On March 22, 2011, E.W.G. entered *Alford*[7] pleas of guilty to Charges 1 and 3, felony child abuse; Charges 2 and 4, domestic assault, were dismissed. The court sentenced E.W.G. to seven years' impris-onment each on Charges 1 and 3, with the sentences to run consecutively, suspended those sentences, and placed E.W.G. on five years' supervised probation. One condition of E.W.G.'s probation was that he have no contact with J.L.G. and T.D.G.

On November 23, 2011, the Juvenile Officer filed a "Petition for Termination of Parental Rights" ("Petition for Termination") requesting the trial court terminate E.W.G.'s parental rights to T.D.G., A.D.G. and M.A.G., and Mother's parental rights as to J.L.G., T.D.G., A.D.G. and M.A.G. Under the heading "Facts Common to Both Counts," the Juvenile Officer alleged the court found that on May 14, 2010, E.W.G. had physically abused J.L.G. and T.D.G. and that all the children had been in the custody of the Juvenile Court for "a period in excess of one year and the conditions which led to the assumption of jurisdiction still persist or the conditions of a potentially harmful nature continue to exist." Count II of the Petition for Termination applied specifically to E.W.G. and alleged as grounds for termination that: (1) he failed to complete his written service agreement; (2) he had a lengthy history of abusing children; (3) on April 20, 2010, he entered pleas of guilty to two counts of the class C Felony of abuse of a child, which mandated the filing of the Petition for Termination under section 211.447.2(3)(d); (4) the felony guilty pleas prohibited the court from ever placing the Children back with E.W.G.; (5) "[p]ursuant to [s]ection 211.447.4(2)(c) RSMo.,[8] [E.W.G.] has com-

---

6. The psychological evaluation was not part of the record and, therefore, this Court relies on the "Investigation and Social Summary" and the trial testimony of caseworker Sara Lancaster, for the psychologist's diagnosis, recommendations and conclusions.

7. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

8. In both the Petition for Termination and "Findings, Order, Judgment and Decree of Court Terminating Parental Rights Judgment," section 211.447.4 is referenced regarding the allegation of abuse and neglect and the applicable factors. This appears to be an error because section 211.447.4 does not include subparagraphs detailing factors, nor does it reference abuse and neglect. Furthermore, both parties cite 211.447.5 in their

mitted a severe act or recurrent acts of physical, emotional or sexual abuse toward [the Children] or any child in the family and the parent knew or should have known that such acts were being committed toward [the Children]"; and (6) "[p]ursuant to [s]ection 211.447.4(2)(d) RSMo., [E.W.G.], although physically and financially able, repeatedly and continuously fails to provide the children with adequate food, clothing, shelter, education, and other care and control necessary for the [Children]'s physical, mental and emotional health and development."

On February 7, 2013, Lancaster filed with the trial court her "Investigation and Social Summary" ("summary"). The summary assessed each child's bond to E.W.G. In regard to the girls, neither J.L.G. nor T.D.G. appeared to have a bond with E.W.G., and they both reportedly "requested no contact with him since [they] came into care." The boys both reportedly "appeared happy to see [their] father" when they had supervised visitation, but after the trial court discontinued the visitation, both boys "no longer appear[ed] to have any bond" with E.W.G., and at the time the summary was completed, both boys "seldom talk[ed] about him anymore."

On March 13, 2012, a hearing on the termination of parental rights was held. Lancaster testified at the hearing and the summary was entered in evidence. Lancaster testified that when the Children came into care, they were placed with a placement family and there had been no reports of any problems with the Children's behavior. She testified the Children were participating in individual and family counseling and had psychological evaluations. She further stated that J.L.G. and T.D.G. did not want to have any contact with E.W.G., and that A.D.G. and M.A.G. were happy to visit with E.W.G. but when visitation was over, "they were okay." She stated that at the time of the hearing, the Children did not mention E.W.G. and referred to the foster parents as "mom and dad."

Lancaster testified that E.W.G. had entered into a written service agreement[9] ("service agreement") with Children's Division, but had not complied with all of its terms.[10] Under the service agreement, E.W.G. was to participate in monthly parental home visits; family support meetings; complete a second psychological evaluation; attend parenting, counseling, and anger management classes; complete alcohol and substance abuse treatment; and have supervised visitation. E.W.G. underwent one psychological evaluation, but had not undergone the second psychological evaluation as required; had not completed any counseling; had not kept her informed of a current address and phone number; and after 22 months since the Children came into care, had not obtained suitable housing for the Children. The last parental home visit E.W.G. allowed was eight months prior to the termination hearing. Lancaster testified that E.W.G. had completed parenting classes, anger management and substance abuse treatment, but it was felt that he was less than honest on his drug and alcohol assessment in that he told the assessor he did not drink. The anger management and substance abuse treatment were require-

---

briefs. This Court is convinced that section 211.447.5 should have been referenced. Therefore, we will reference section 211.447.5 when discussing claimed error regarding the trial court's finding of abuse and neglect.

9. This document was also not part of the record before us. We again rely on the trial testimony of caseworker Sara Lancaster as to its contents.

10. E.W.G. also testified that he was offered and signed the service agreement.

ments of his probation and were not completed until he was placed on probation.

E.W.G. was "somewhat cooperative" in that he participated in visitation with A.D.G. and M.A.G. until that was terminated by the trial court. Most of the supervised visits between E.W.G. and the boys were judged "appropriate" in the summary, although two were not when "[E.W.G.] made fun of [A.D.G.] for not understanding his homework." While E.W.G. was paying some child support, he was "$3846.20 in arrears."

Lancaster testified that in addition to the physical abuse sustained by J.L.G. and T.D.G., there were other concerns in the home. The boys, A.D.G. and M.A.G., were treated differently than the two girls in that they basically did what they wanted, the girls were expected to take care of them, and the girls were blamed for any kind of trouble that happened. The boys related that they treated the girls badly as well and that this behavior was taught to them by E.W.G. In addition, during home visits, Lancaster observed inappropriate pictures of females displayed throughout the home.

Lancaster testified that Children's Division recommended termination of E.W.G.'s parental rights with a goal of adoption as it was in the Children's best interest as they would no longer have to suffer from physical and emotional abuse. Lancaster testified that in her opinion there were no further services that could be offered to E.W.G. that would enable him to adjust to his circumstances, reduce the risk of his abusing the Children, and enabling them to return home.

Three police officers who responded to the April 2010 abuse allegations also testified at the hearing. Officer Tracy Hughes was present when J.L.G. and T.D.G. reported E.W.G. whipping them with the cord, and also to their complaints of E.W.G.'s past abuse including pulling their hair and slamming their heads into the wall. Officer Hughes further testified that he heard J.L.G.'s accusation that E.W.G. burned her arm with a cigarette, although he stated that J.L.G. first claimed the red marks were mosquito bites. Officer David Becker testified that after E.W.G. was jailed, he witnessed one of the girls point to an electrical extension cord in their home and say that was one of the items E.W.G. used to beat them.

E.W.G. testified at the hearing and denied the abuse allegations in regard to all the children. E.W.G. stated that the bruising and red marks from the cord were the result of boys in the backyard with J.L.G. and T.D.G. "swinging that cord around, hitting each other with it[.]" When further questioned, he testified that "[i]t wasn't me."

E.W.G. also denied that the red marks on J.L.G.'s arm were burn marks, but the result of ants, which he found under her mattress when he came home from jail. At the hearing, E.W.G. testified that he entered *Alford* pleas to the child abuse charges not because he was guilty but to keep the Children out of court.

With respect to the service agreement, E.W.G. disputed the Juvenile Office's position that he had not completed the agreement.

Roxann Lauer ("Lauer"), who had been the Children's "placement provider" since April 21, 2010, testified that all of the children now called her and her husband "Mom" and "Dad." Lauer testified that the girls "don't want anything to do with" E.W.G., but that when E.W.G. was allowed to visit the boys, upon returning from seeing him, they would often ask when "the next time they were going to get to see him to get more stuff." Once visitation

was terminated, the Children received no cards, gifts or letters from E.W.G.

Lauer testified that when J.L.G. was placed in her home, she had "significant burn marks on both arms," "past scars from the burns," and "wounds on [her] legs." T.D.G. also had wounds on her legs. She testified that when the girls learned they might have to testify in court "they were very sick, they were very scared, shaken, they didn't want to be in the same room with [E.W.G.]."

When the boys were placed in Lauer's home, they had no "respect of any kind" for a woman—her or the girls. This behavior persisted for at least five to six months. Lauer recalled A.D.G. wetting the bed one evening and waking J.L.G. up to change his bed. The girls had to assist M.A.G. in wiping his bottom because he did not know how to do it himself even though he was nine years old.

Since being in Lauer's home, all the children were now on the honor roll at school.[11] Lauer testified that she and her husband would like to adopt all four children and keep them together.

E.W.G. asked the trial court not to terminate his parental rights and to restore his visits so that he could see the Children.

The guardian ad litem for the Children stated it was in the best interest of the Children that E.W.G.'s parental rights be terminated because the Children deserved the right to have stability in their lives and be somewhere they would be treated appropriately and not physically abused.

She indicated that due to the provisions of his probation, E.W.G. would not be allowed to have any contact with J.L.G. and T.D.G. for at least six years. Lastly, she stated that the manner and severity of the physical abuse to the girls was also abusive to the boys as they witnessed it, they modeled it, and they believed that to be the correct way to treat women. She believed the Children had no bond with E.W.G.

After receiving the evidence, the trial court announced that it found the allegations in the Petition for Termination to be true, that it was in the "best interest of [the] Children that such termination occurs[,]" and that the court "hereby terminates the parental rights of [E.W.G.]" in and to T.D.G., A.D.G., and M.A.G. The trial court requested that "formal judgment . . . be prepared and submitted by . . . the Juvenile Office."

On March 20, 2012, the trial court entered its "Findings, Order, Judgment and Decree of Court Terminating Parental Rights" ("Judgment"). The trial court found that the Children had been subject to the court's jurisdiction since April 22, 2010, and the Children had been in foster care since that time. The trial court determined "the child has been abused or neglected" by ruling:

> 6b. Pursuant to Section 211.447.[5](2)(a) RSMo.,[12] the child has been abused or neglected (as previously determined in case numbers: Grundy County, [Iowa] Circuit Court Cases . . . Certified Copies of said cases entered

---

11. At the time of placement, A.D.G. was failing the fourth grade, but at the time of the hearing was making "A's and a couple of B's." J.L.G. had "special needs" and had been "classified as mentally retarded on her evaluation[] . . . but [was] making great strides." At the time of hearing, J.L.G. was 16 years old and was doing seventh grade math instead of fourth grade math. Lauer

indicated the neurologist at "Children's Hospital" had recommended "horse therapy" and they now had a horse at their home which J.L.G. was learning to care for. Lauer stated that T.D.G. was "doing good" and M.A.G. was getting "straight A's."

12. See footnote 5 noting the reference should have been to section 211.447.5.

and received by this Court; and Dent County, Missouri Circuit Court Cases[.]"

As to E.W.G., the trial court ruled:

7b. THE COURT FURTHER FINDS:

(1) That [E.W.G.] has failed to complete all the requirements of his written service agreement in that he refuses to allow the Children's Division to make monthly visits to his home.

(2) That [E.W.G.] has a lengthy history of abusing children in that on the 28th day of August 1997, in the Circuit Court of Grundy County, [Iowa] that Juvenile Court exercised jurisdiction over [J.L.G.] due to [E.W.G.'s] arrest for assault and for cruelty that resulted in injury to a child.

(3) That on April 20, 2010, [E.W.G.] entered pleas of guilty to two counts of abuse of a child, Class C Felonies, in that [sic] Circuit Court of Crawford County, Missouri in Case Number: 10DE–CR00269–02, a felony which mandates the filing of a Petition to Terminate Parental Rights as set forth under Section 211.447.2(3)(d) RSMo.

(4) That the charges which [E.W.G.] pled guilty to in Case Number 10DE–CR00269–02 were under subdivision (2) of subsection 1 of Section 568.060 RSMo. And in accordance with Section 211.038 RSMo., this Court has the discretion to decline placing any of these minor children back with [E.W.G.].

(5) Pursuant to Section 211.447.[5](2)(a) RSMo., [E.W.G] does not have a mental condition which is permanent which has no reasonable likelihood to be reversed, and which renders [E.W.G.] to knowingly provide the children the necessary care, custody and control.

(6) Pursuant to Section 211.447.[5](2)(b)RSMo., [E.W.G] does not have a chemical dependency which prevents [E.W.G.] from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable [E.W.G.] to consistently provide such care, custody, and control.

(7) Pursuant to Section 211.447.[5](2)(c) RSMo., [E.W.G.] has committed a severe act or recurrent acts of physical, emotional or sexual abuse toward the children or any child in the family and the parent knew or should have known that such acts were being committed toward the children.

(8) Pursuant to Section 211.447.[5](2)(d) RSMo., [E.W.G.], although physically and financially able, repeatedly and continuously fails to provide the children with adequate food, clothing, shelter, education, and other care and control necessary for the child's physical, mental and emotional health and development.

With respect to the best interest of the Children, the trial court concluded that "[t]ermination of the parental rights of [E.W.G.] in, to and over [T.D.G., A.D.G., and M.A.G.] is in the best interest of the children." This appeal followed.

In seven points relied on, E.W.G. contends the trial court erred in terminating his parental rights because: (1) there was no evidence of a link between E.W.G.'s previous alleged abuse or neglect and the likelihood of future danger to the Children;

(2) the trial court failed to make specific findings of fact on the four factors set out in section 211.447.5(2); (3) "failure to remedy" under section 211.447.5(3) is no longer a ground for termination under section 211.447.6; (4) the trial court failed to make specific findings on the four factors set out in subsections (a) through (d) in section 211.447.5(3); (5) there was no evidence E.W.G. pled guilty to section 568.060.1(2); (6) the court erroneously declared and applied the law in that section 211.038 preventing reunification with a parent that pled guilty of certain felony violations does not provide an "independent basis for terminating parental rights"; and (7) the trial court failed to evaluate and make findings on the seven factors set out in section 211.447.7.

The Juvenile Office contends: (1) there was clear and convincing evidence of a link between E.W.G.'s previous abuse and future danger to the Children; (2) the trial court made specific findings of fact as to the four factors in section 211.447.5(2); (3) the trial court did not terminate E.W.G.'s parental rights for failure to remedy so there was no error relating to E.W.G.'s Points III and IV; (4) there was clear, cogent, and convincing evidence that E.W.G. pled guilty to two counts of abuse of a child in violation of section 568.060.1(2); (5) there was no error regarding section 211.038 because the trial court did not terminate E.W.G.'s parental rights pursuant to that section; and (6) E.W.G. did not allege in his "Motion for New Trial and/or Rehearing" error in the trial court's Judgment as required by Rule 78.07.[13] The issues presented for our determination are:

1. Whether the trial court erred in failing to make specific findings of fact on the factors set out in section 211.447.5(2) and (3), and 211.447.7.

2. Whether the trial court erred in terminating E.W.G.'s parental rights based on abuse and neglect.

## Standard of Review

 "A trial court's decision to terminate parental rights is reviewed under the well-known standards of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *In the Interest of C.L.W.*, 115 S.W.3d 354, 355 (Mo.App. S.D.2003). We will affirm the trial court's judgment terminating parental rights "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Id.* "We will not reverse the trial court's decision unless we are left with the firm belief that the decision was wrong." *In re S.M.B., Jr.*, 254 S.W.3d 214, 218 (Mo.App. S.D.2008). "We defer to the fact-findings of the juvenile court and consider all evidence and reasonable inferences in the light most favorable to the judgment." *In re N.J.S.*, 276 S.W.3d 397, 400 (Mo.App. E.D.2009).

 In order to terminate parental rights, the trial court must employ a two-step analysis. *In the Interest of S.J.H. and C.A.H.*, 124 S.W.3d 63, 66 (Mo.App. W.D.2004). First, the court must determine whether a statutory ground for termination has been proven by "clear, cogent, and convincing evidence." *Id.*; § 211.447.5. "Clear, cogent and convincing evidence is that which 'instantly tilts the scales' in favor of termination when weighed against the evidence presented by the parent whose rights were terminated." *In re A.M.F. and D.R.F.*, 140 S.W.3d 201, 205 (Mo.App. S.D.2004) (quoting *In the Interest of C.L.W.*, 115 S.W.3d 354, 355–56 (Mo.App. S.D.2003)). Clear, cogent, and convincing evidence may be found even

**13.** All rule references are to Missouri Court Rules (2012).

though the court has contrary evidence before it or the evidence may support a different conclusion. *In re S.M.B., Jr.,* 254 S.W.3d at 218. Second, the trial court must determine whether termination of parental rights is in the best interest of the child. *In the Interest of L.M.,* 212 S.W.3d 177, 181 (Mo.App. S.D.2007).

"The termination of parental rights is an awesome power that involves fundamental liberty interests associated with family and child rearing[ ]"; therefore, "we review the record very closely to ensure this awesome power was properly exercised." *In re L.M.,* 212 S.W.3d at 181. "In our review, we are mindful that the juvenile court was in a superior position to judge the credibility of the witnesses and that it was free to believe all, part, or none of the witnesses' testimony." *In re B.C.K.,* 103 S.W.3d 319, 322 (Mo.App. S.D.2003). Any conflicting evidence is viewed in the light most favorable to the trial court's decision. *In re C.A.M.,* 282 S.W.3d 398, 405 (Mo.App. S.D.2009).

## Analysis

### Allegations of Error in Points II, IV, and VII Not Preserved for Review

For ease of discussion, we begin with E.W.G.'s Points II, IV, and VII that claim the trial court erred in terminating his parental rights because the court erroneously applied the law in that the trial court failed to make specific findings required by statute. E.W.G. failed to preserve these claims of error. Effective January 1, 2005, Rule 78.07(c) was amended to require an aggrieved party to file a motion to alter or amend the judgment specifically raising " 'allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings' " in order to preserve those claims of error for appellate review.

*See In re M.D.D., Jr.,* 219 S.W.3d 873, 875–76 (Mo.App. S.D.2007) (quoting Rule 78.07(c)); *In re K.M.C., III,* 223 S.W.3d 916, 926 (Mo.App. S.D.2007); *In re Holland,* 203 S.W.3d 295, 302 (Mo.App. S.D. 2006); *see In re C.K.,* 221 S.W.3d 467, 469–70 (Mo.App. W.D.2007). E.W.G. failed to file a motion to amend the judgment contending that the trial court failed to make statutory findings and/or erred in the form or language of the judgment, nor did E.W.G. include in his "Motion for New Trial and/or Hearing" a claim of error relating to the form or language of the Judgment as required by Rule 78.07(c). As such, E.W.G.'s claims of error are not preserved. Accordingly, E.W.G.'s Points II, IV and VII are denied.

### Record Contains Clear, Cogent, and Convincing Evidence of Abuse as Grounds for Termination of Parental Rights

We next address E.W.G.'s Point I. Because we find Point I is dispositive of the appeal, we need not address E.W.G.'s other claims of error as to termination of his parental rights.

In Point I, E.W.G. claims the trial court erred in terminating his parental rights based on abuse because the trial court failed to consider whether his prior acts indicated a likelihood of future harm.

Section 211.447.5(2) provides for termination of parental rights if:

The child has been abused or neglected. In determining whether to terminate parental rights pursuant to this subdivision, the court *shall* consider *and make findings* on the following conditions or acts of the parent:

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be

reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control; (b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development.

(Emphasis added).

In order to terminate under section 211.447.5(2), there must be clear, cogent, and convincing evidence before the trial court indicating that a child has been abused or neglected. *In re N.J.S.*, 276 S.W.3d at 400. As previously noted, this Court will affirm the trial court's decision unless the record contains no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously applies the law.

Here, the trial court recited all four factors under section 211.447.5(2) and found factors (c), severe or recurrent acts

of physical abuse, and (d) repeated or continuous failure to provide for the child, applied as to E.W.G.[14] E.W.G. alleges the trial court looked solely to his past conduct and failed to consider the likelihood of future harm in terminating his parental rights. We disagree and conclude the trial court's findings are supported by the evidence.

"When a parent has committed severe and recurrent acts of abuse toward his child, logic and life experiences dictate the presumption that an unreformed parent will continue to be a threat to the welfare of the child for the foreseeable future." *In re T.M.E.*, 169 S.W.3d 581, 588 (Mo.App. W.D.2005). Here, the evidence was that the acts of abuse by E.W.G. were severe and recurring. There was testimonial evidence and photographs of burn marks, past scars from burns, and wounds on both J.L.G. and T.D.G. The abuse was not isolated to a particular incident or time, but had been going on since 1997 in Iowa. E.W.G. "pled guilty to 2 counts of assault on [Mother's children]" in Iowa, and there was an order in Iowa prohibiting E.W.G. from being around Mother's children, including J.L.G., while he was on probation in Iowa. Mother and E.W.G. violated this order, and J.L.G. was taken into custody in Iowa because E.W.G. continued to have contact with J.L.G.

The testimonial evidence of abuse before the trial court also included the three police officers who responded to the April 2010 abuse allegations. Officer Hughes testified that J.L.G. reported being hit numerous times with a flat, wide cord, grabbed by her hair and shook, and had her head slammed into the wall several times by E.W.G. J.L.G. reported to Offi-

---

**14.** Factors (a) and (b) did not apply because the trial court determined E.W.G. did not have a permanent mental condition or a chemical dependency which prevented him for consistently providing care.

cer Hughes that instances like that happened all the time, she had been hit with the cord numerous times in the past, burned with cigarettes, and hit by E.W.G. T.D.G. also reported E.W.G. whipping them with the cord,[15] and past abuse including pulling their hair and slamming their heads into the wall.

 We agree that abuse or neglect sufficient to support termination must be based on conduct at the time of termination and a consideration of future harm to the child by a continued relationship with the parent. *In re K.A.W.*, 133 S.W.3d 1, 9 (Mo. banc 2004). Past behavior can support termination so long as it is linked to "predicted future behavior." *Id.* at 9–10. The Supreme Court of Missouri held that "[a] parent's efforts to comply with a parenting, reunification, or treatment plan will provide the court with an indication of a parent's likely efforts in the future to care for the child." *In re D.O.*, 315 S.W.3d 406, 417 (Mo.App. S.D.2010) (citing *In re K.A.W.*, 133 S.W.3d at 10). In this case, the service agreement can provide "highly relevant evidence" of E.W.G.'s predicted future behavior and was evidence presented to the trial court. *See In re K.A.W.*, 133 S.W.3d at 10.

E.W.G.'s service agreement required him to participate in monthly parental home visits, family support team meetings, two psychological evaluations, parenting classes, counseling, anger management, alcohol and substance abuse treatment, and supervised visitation. E.W.G.'s participation and efforts to comply with his service agreement provided an indication that at the time of the termination hearing, he had not reformed and was likely to put minimal effort in the future into care of the Children. E.W.G. failed to comply with his service agreement a number of

ways: he failed to complete any counseling, which in light of his history of physically and emotionally abusing the children could potentially help reform his abusive behavior toward the children; at times E.W.G. would not allow caseworkers to come to his home for home visits; the last parental home visit he allowed was eight months prior to the termination hearing; and he failed to keep in contact with the caseworker and provide his current contact information. Most telling is that during the 22 months the children were in care, he was unable to confirm that he had suitable housing for the Children. While he did complete parenting classes and anger management, these were also requirements of his probation and were not completed by E.W.G. until he was placed on probation. The only items required by the service agreement that E.W.G. completed were also required as part of his criminal probation and only completed after he was placed on probation.

Also before the trial court was the caseworker's testimony that there were no further services that could be offered to E.W.G. that would enable him to adjust to his circumstances, reduce the risk of his abusing the Children, and enable them to return home. The findings in E.W.G.'s psychological evaluation support this testimony. Dr. Nolen stated he knew of no services or medication that would improve E.W.G., went so far as to recommend no further contact between E.W.G. and the Children, and recommended termination of E.W.G.'s parental rights take place immediately because there was no other course of action.

No services could likely be provided to E.W.G. to reduce the risk of his abusing the Children because under oath, he denied causing the injuries to J.L.G. and T.D.G. E.W.G. testified that the marks on

---

15. Officer David Becker testified that after E.W.G. was jailed, one of the girls even identified an electrical extension cord in their home that E.W.G. used to beat them.

J.L.G. were not burn marks, but rather marks caused by ants under her mattress because she left food beside her bed. As to the bruises and welt marks, E.W.G. testified he did not give the children the marks, but rather the children gave themselves those injuries.

Despite denying he caused the injuries to the girls, while the children were in custody, E.W.G. entered *Alford* pleas of guilty to two class C Felony charges of abuse of a child, pursuant to section 568.060, involving J.L.G. and T.D.G. The court sentenced E.W.G. to seven years' imprisonment each on Charges 1 and 3, with the sentences to run consecutively, suspended those sentences, and placed E.W.G. on five years' supervised probation. One condition of E.W.G.'s probation was that he have no contact with J.L.G. and T.D.G.

E.W.G.'s guilty pleas are further evidence in the record supporting termination, which the trial court cited in the Judgment, along with sections 211.038 and 568.060.[16] While section 211.038 does not specifically refer to termination of parental rights, it does show "a strong public policy against returning a severely and criminally abused child to the parents involved in the abuse." *In re T.M.E.*, 169 S.W.3d at 586. *See also In re D.O.*, 315 S.W.3d at 418 (noting the court had no dispute with "our fellow district's notion that section 211.038 recognizes a public policy against returning a severely and criminally abused child to parents who were involved in that abuse[.]").[17]

"Our courts look to the totality of a parent's conduct, both prior to and after the filing of the petition, and 'all grounds for termination must to some extent look to past conduct because the past provides vital clues to present and future conduct.'" *In re J.M.T.*, 386 S.W.3d 152, 161 (Mo. App. S.D.2012) (quoting *In re N.M.J.*, 24 S.W.3d 771, 780 (Mo.App. W.D.2000)). When looking at the totality of E.W.G.'s conduct, there are no facts, conduct or factors presented here that would suggest that E.W.G. has repented and reformed his conduct to discontinue physical and emotional abuse on the Children. In fact, nothing has changed since the psychologist's recommendation that E.W.G. never have contact with any of the Children following E.W.G.'s psychological exam. E.W.G. demonstrated total disregard for completing items on the service agreement other than those required of him by his probation and even at the termination hearing, continued to deny he caused the injuries that brought the Children into care. There is a legitimate presumption under these circumstances, in the absence of contrary evidence, that E.W.G. is not rehabilitated in his ability to function as a parent. *See In re K.R.G.*, 248 S.W.3d 651, 653 (Mo.App. S.D.2008).

A termination based on abuse may be justified by the existence of only one of the four factors found in section 211.447.5(2). *In the Interest of J.M.N.*, 134 S.W.3d 58, 68 (Mo.App. W.D.2004). Nonetheless, the trial court also found the Children had been neglected by E.W.G. in

---

16. E.W.G. testified at the hearing that he pled guilty to the two counts of child abuse relating to J.L.G. and T.D.G., and he is to have no contact with both girls.

17. E.W.G. argues in Point VI the trial court erred in relying on section 211.038 to provide "an independent basis for termination of [his] parental rights." We disagree. The trial court can mention section 211.038 as a basis

to "reinforce" the court's decision to terminate on the grounds of abuse. *See In re T.M.E.*, 169 S.W.3d at 586. Here, there is no indication the trial court used section 211.038 as an "independent basis" for termination, but rather as further clear, cogent, and convincing evidence of abuse and neglect by E.W.G.

that he had shown repeated and continuous failure to provide for the Children under paragraph (d).[18] This finding was also supported by the record and evidence adduced at trial.[19]

We find the trial court's findings of abuse and neglect are supported by substantial evidence in the record, are not against the weight of the evidence, and did not erroneously declare or misstate the law. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Accordingly, E.W.G.'s Point I is denied.

██ "The presence of evidence to support one statutory ground for termination is sufficient to terminate a parent's rights." *In re M.D.D., Jr.*, 219 S.W.3d at 876. "Where multiple statutory grounds for terminating parental rights are found, a reviewing court need only find that one of these bases is supported by the record and that the termination of parental rights was in the best interests of the children." *In re A.M.F.*, 140 S.W.3d 201, 205 (Mo. App. S.D.2004). Because we affirm the trial court's findings on abuse and neglect, we need not address the challenges to termination found in E.W.G.'s Points III, V, and VI.

Accordingly, the trial court's Judgment is affirmed.

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., concur.

---

18. Specifically, the trial court found that E.W.G. "although physically and financially able, repeatedly and continuously fails to provide the children with adequate food, clothing, shelter, education, and other care and control necessary for the [Children]'s physical, mental and emotional health and development."

19. The trial court also cited E.W.G.'s two felony child abuse guilty pleas along with section 211.447.2(3)(d) in support of termination of E.W.G.'s parental rights. Section 211.447.2(3)(d) provides a petition to terminate parental rights shall be filed when a court determines a parent has committed a felony assault that resulted in bodily injury to the child or to another child of the parent.