

# In the Missouri Court of Appeals
## Eastern District

DIVISION THREE

| | | |
|---|---|---|
| IN THE INTEREST OF: E.D.C. | ) | No. ED104085 |
| | ) | |
| | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| | ) | 15SL-JU00869 |
| | ) | |
| | ) | Hon. David Lee Vincent III |
| | ) | |
| | ) | FILED: October 4, 2016 |

L.C. ("Mother") appeals the judgment terminating her parental rights with respect to E.C. Because the trial court failed to make findings regarding the likelihood of future harm to this child, we must reverse and remand.

E.C. was born on January 12, 2007. He and his two older siblings were adopted by Mother that same year. Between 2007 and 2009, there were eight hotline calls regarding Mother's abuse of the older children, which included hitting them with objects in the eye and head. The Division provided seven months of intensive in-home services during that time period. On May 31, 2011, the trial court took jurisdiction over all of the children after finding that Mother had physically abused her daughter while the children were all members of the same household. The court found, and Mother admitted, that she had struck the girl with a belt "causing extensive bruising with multiple linear and loop marks upon the arms, leg and back." Mother never physically abused E.C.

After the court took jurisdiction, Mother regularly visited E.C.; after a while, the court allowed unsupervised visits. Mother sometimes brought small items, such as gifts, snacks, lunch, clothes and supplies. She did not, however, provide any financial support at that time. Mother participated in services as ordered, which included a psychological and parenting assessment, anger management classes, individual therapy and parenting programs. The psychologist who conducted the assessment concluded that Mother "suffers from a significant learning disability and likely is mildly lowered functioning, although her adaptive (everyday) behavior skills appear to be adequate." Mother admitted to the psychologist that she hit the children as a form of discipline. The psychologist observed that Mother "appeared oddly detached from the pain and fear that her children experienced." Mother was found to have a "rigid and over-authoritarian" parenting style and a "very limited understanding of her children's needs and history" or ability to tailor her response to misbehavior to each child's individual needs.[1]

In August of 2013, Mother pled guilty to child abuse that, according to the written plea and judgment, related to incidents of abuse occurring between January 2009 and May 2011, when the court took jurisdiction. Mother was sentenced to seven years in prison, and she began her incarceration in September of 2013. While incarcerated, she actively participated in her incarceration service plan. Mother was denied visitation, but maintained contact with E.C. through letters and called the case worker regularly to ask about him. She participated in parenting classes, self-improvement programs, anger management class and victim impact programs while in prison. Mother was employed in food services at one facility, but made no financial contributions to E.C.'s care other than one payment Mother claimed to have made in April 2014 of an unknown amount.

---

[1] Only the final page of the results of the psychological and parenting assessment has been made part of the record on appeal. Though it is unclear on what date the assessment occurred, it must have been sometime between May of 2011 when the court took jurisdiction and September of 2013 when Mother began her incarceration.

Ultimately, Mother consented to termination of her parental rights with respect to E.C.'s siblings, stating she felt it was in their best interest because they did not consider her their mother and never wanted to see her again. In July of 2015, the juvenile officer filed a petition to terminate Mother's rights to E.C., asserting as grounds for termination the adjudication of "abuse or neglect" that gave rise to the court's jurisdiction.[2] The trial was held in November of 2015. Mother was still incarcerated at the time.

The first Division case worker to testify at trial had been assigned to this case from August of 2014 until October of 2015. She testified that E.C., eight years old at the time of trial, had been diagnosed with and takes medicine for ADHD, which causes him to have trouble concentrating and wet the bed frequently. She testified that Mother was provided all the appropriate services and there were no additional services that could have been provided to bring about reunification with E.C. She did not know whether the child would be at any risk of harm if he were returned to Mother's custody, but she believed termination was in the child's best interest because he "seeks a permanent home wherever he can find it."

Mother testified at trial that she loves E.C. and knows he loves her. She did not dispute any of the past abuse of his siblings. Though she accused a case worker of not providing the children all the items she brought for them and once suggested that is what led to her losing custody, she ultimately accepted responsibility for how the children came to be under the court's jurisdiction. Other than disputing whether any of the hotline calls were made in 2007, she agreed with everything the case worker said in her testimony.

A second case worker testified; she had only been on the case for three weeks in October of 2015. She also recommended termination, citing Mother's incarceration at the time of trial. She

---

[2] The petition also alleged Mother was unfit to parent because of her felony conviction. The trial court found those allegations were not proven at trial.

was aware that E.C.'s therapist had, shortly before the trial, recommended reunification if Mother's psychological and parenting assessments was favorable. But the case worker disagreed with the therapist. She was aware that the only assessment of Mother was over two years old by the time of trial, but found it "difficult to say" whether getting a current assessment would have been appropriate. Though she applauded Mother's progress and participation in her classes, "given her history and the reason that this case is open," the case worker said she would have concerns about delaying permanency for E.C. or returning him to Mother's care.

The GAL filed a post-trial recommendation concluding that Mother showed a "great deal of interest" in and "may indeed have a bond" with E.C. and that she "possibly" did the best she could by providing some monetary support. The GAL said that Mother "virtually completed her written service agreement" and believed additional services "may or may not" bring a lasting adjustment for Mother in the foreseeable future. Nevertheless, due to Mother's "numerous, deliberate and violent acts against the child's older siblings, the child has been deprived of a stable home for more than four years." These acts of abuse, the GAL concluded, "put the child at substantial risk of both physical and emotional damage." Thus, the GAL recommended termination.

The trial court terminated Mother's rights on grounds that E.C. was "abused/neglected" under Section 211.447.5(2) and then addressed the conditions or acts of the parent under subparagraphs (a) through (d) of that provision. The court found no evidence of a mental condition or chemical dependency under (a) or (b). Under subparagraph (c), the trial court found that Mother had "committed a severe act or recurrent acts" of physical or emotional abuse against this child or another child in the family. The court cited Mother's admission to physical abuse of E.C.'s sister, which led to the court's jurisdiction. It referenced her plea of guilty to a felony in relation thereto,

4

which included abuse during 2009 through 2011, and for which Mother was still incarcerated at the time of trial. The court also found evidence of abuse prior to the time frame captured in the plea, namely the hotline calls and injuries between 2007 and 2009 resulting from Mother's abuse of both of E.C.'s siblings. The trial court also found that, while in Mother's care, all of the children "experienced emotional abuse through fear and trauma as a result of the physical abuse perpetrated by Mother."

Under subparagraph (d), the trial court found that Mother had "repeatedly and continuously failed," although physically or financially able, to provide E.C. with adequate food, clothing, shelter or other care and control necessary for his physical, mental or emotional health and development. It listed the minimal items Mother provided at only some of her visits before her incarceration. The court found no evidence that Mother was unable to work or contribute to E.C.'s support during that time. Moreover, the court found that Mother was able to work—and did work—while incarcerated, but still failed to provide any financial assistance except one payment of some undisclosed amount.

Mother appeals, contending that the court erred by failing to engage in the prospective analysis required by the Supreme Court in In re K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004). She contends that the court relied on only her past acts of abuse—not on her conduct at the time of termination—and failed to address the future harm to this child. We agree.

Under K.A.W., the trial court must engage in a prospective analysis to determine whether grounds for termination exist. 133 S.W.3d at 9. "An essential part of any determination whether to terminate parental rights is whether, considered at the time of the termination and looking to the

5

future, the child would be harmed by a continued relationship with the parent." Id.[3] Though the trial court may consider the parent's past conduct, "it is insufficient merely to point to past acts, note that they resulted in abuse or neglect and then terminate parental rights." Id. Rather, past behavior can support grounds for termination "only if it is convincingly linked to predicted future behavior" and there must be "some explicit consideration of whether the past acts provide an indication of the likelihood of future harm." Id. at 9-10.

Except for the fact that Mother was incarcerated at the time of termination, the trial court cited exclusively to the past conduct of Mother in finding the abuse and neglect grounds for termination. It cited her physical abuse of E.C.'s siblings before the court took jurisdiction, the emotional trauma to all the children while in Mother's care before jurisdiction and her failure to provide financially for E.C. while he was in the Division's custody. The court made no reference to the likelihood of future harm to this child based on any of these past acts or because of Mother's current incarceration. At one point in its findings, the trial court refers to the fact that the siblings were abused when they were eight to ten years old and then later notes that E.C. was "not of school age" during that time period. Perhaps this alludes to the trial court's belief that Mother would be more likely to abuse E.C. as he reaches the ages that his siblings were when she abused them. To the extent the trial court believed there was a convincing link between the past abuse of E.C.'s siblings and her predicted future behavior with E.C., the court was required to "explicitly" make such a finding, and it did not achieve that by simply referencing the difference in the children's ages at the time of the abuse.

---

[3] The juvenile officer argues that K.A.W. is distinguishable from this case because the grounds for termination were different and focused primarily on the parent's failure to rectify the conditions that led to jurisdiction in that case. Regardless, the principles announced in K.A.W. apply broadly to all termination cases.

6

Where, as here, the trial court does not articulate in its judgment a convincing link between the parent's past conduct and her predicted future behavior and an explicit consideration of the likelihood of future harm to the child based on those past acts, we cannot assume that the trial court engaged in the required prospective analysis necessary to support the stated ground for termination. In re C.K., 221 S.W.3d 467, 474 (Mo. App. W.D. 2007) (reversing where court relied entirely on past acts; appellate court "cannot assume" trial court explicitly considered potential for future harm); see also In re A.M.W., 448 S.W.3d 307, 314-15 (Mo. App. E.D. 2014) (reversing where trial court did not articulate whether failure to pay support indicated "likelihood of future neglect"); In re P.J., 403 S.W.3d 672, 675 (Mo. App. S.D. 2012) (reversing where court cited only past behavior).

The juvenile officer cites In re T.M.E., for the proposition that on appeal we can presume a likelihood of future harm to E.C. based on Mother's severe and recurrent acts of abuse of her other children. 169 S.W.3d 581, 588 (Mo. App. W.D. 2005). In that case, the Western District held that the juvenile officer did not have to prove that the parent would abuse his daughter again because having severely and repeatedly beaten her in the past, "logic and life experiences dictate the presumption that an unreformed parent will continue to be a threat to the welfare of the child for the foreseeable future." Id. In that case, there was no evidence that the father had reformed and, absent such evidence, the court concluded it could legitimately presume that he had not. Id. Thus, it found "no need to discuss whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time." Id. In doing so, the court distinguished K.A.W., because there had been no abuse in that case and the service plan had been helping that parent. Id. A few other courts have similarly relied on a presumption of future harm based on the severe and recurring past acts of abuse of an

7

unreformed parent.  See In re K.R.G., 248 S.W.3d 651, 653 (Mo. App. S.D. 2008); In re J.L.G., 399 S.W.3d 48, 61 (Mo. App. S.D. 2013).

Unlike cases in which the record on appeal reveals recurring acts of severe abuse coupled with evidence that the parent has not attempted to reform that behavior, this record on appeal does not give rise to a legitimate presumption that Mother will abuse E.C. in the future.  First, the record is incomplete and does not contain all of the exhibits admitted at trial.  Second, on this record it is undisputed that Mother complied with her service plan both in and out of prison, including participation in therapy, anger management, parenting classes, victim impact programs and other self-help programs.  Thus, she was, at the very least, attempting to reform.  The Supreme Court has recognized that a parent's compliance with the service plan is of "paramount importance" to determining his or her future behavior and is never irrelevant.  K.A.W., 133 S.W.3d at 10, 18. Having complied with the plan, participated in all the services and completed all the programs, we decline to assume that Mother is not reformed or presume she is likely to continue her past abusive behavior in the future.  This would be a particularly unfair inference given that the only assessment of her was conducted over two years before the trial and before completion of at least some of the services.  See In re C.A.L., 228 S.W.3d 66, 72-73 (Mo. App. S.D. 2007) (finding outdated psychological assessment insufficient to give court understanding of parent's circumstances at time of termination).  Third, as the juvenile officer correctly notes, the trial court is in the superior position to determine credibility and weigh the evidence.  Thus, rather than rely on inferences, presumptions or assumptions from an incomplete record on appeal to resolve this case, we remand so the trial court can engage in the required prospective analysis under K.A.W. and include its findings therefrom expressly in the judgment.

Without sufficient findings of future harm, the stated ground for termination is unsupported in this case. Point I is granted. We need not address Point II regarding the trial court's best interest findings. The judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. On remand, in order to terminate, the trial court must find a convincing link between Mother's past behavior and her predicted future behavior and explicitly consider whether her past acts provide an indication of the likelihood of future harm to E.C. This prospective analysis must be expressly articulated in the trial court's judgment. It may be that the trial court already has before it the necessary evidence from which it can undergo that analysis and from which it would conclude that there are grounds for termination in this case.[4] Given the passage of time, additional updated evidence may be warranted.

ROBERT G. DOWD, JR., Judge

Angela T. Quigless, P.J., and
Lisa S. Van Amburg, J., concur.

---

[4] To terminate one's parental rights, the trial court must find clear, cogent and convincing evidence to support at least one of the statutory grounds set forth in Section 211.447. K.A.W., 133 S.W.3d at 9. Evidence is clear, cogent and convincing when it "instantly tilts the scales in favor of termination" when weighed against opposing evidence and leaves the fact-finder with the "abiding conviction that the evidence is true." Id. at 12.

9